FRABOTTA, Appellant,

v.

MERIDIA HURON HOSPITAL SCHOOL OF NURSING, Appellee.

[Cite as *Frabotta v. Meridia Huron Hosp. School
of Nursing* (1995), 102 Ohio App.3d 653.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67172.

Decided April 17, 1995.

**654**

*Morscher & Straka* and *Joseph J. Straka,* for appellant.

*Reminger & Reminger* and *Nicholas D. Satullo,* for appellee.

BLACKMON, Judge.

Candida Frabotta, plaintiff-appellant, appeals the trial court's decision granting summary judgment in favor of Meridia Huron Hospital School of Nursing, defendant-appellee. Frabotta assigns the following errors for our review:

"I. The trial court erred and abused its discretion when it found, under the evidentiary presumptions of Civil Rule 56(C), that appellee's act of dismissing appellant was not arbitrary and capricious, despite the fact that appellant was not allotted a reasonable opportunity to respond and correct her alleged deficient conduct.

"II. The trial court erred and abused its discretion when it found, under the evidentiary presumptions of Civil Rule 56(C), that appellee's act of dismissing appellant was not arbitrary and capricious, despite the fact that appellant was the only student dismissed from appellee school for a period of at least ten years through the utilization of appellee's wholly subjective catchall dismissal policy."

Having reviewed the record of the proceedings and the legal arguments presented by the parties, we affirm the decision of the trial court. The apposite facts follow.

In September 1989, Candida Frabotta enrolled in a two-year program at Meridia Huron Hospital School of Nursing to become a registered nurse. Each course was divided into two areas of course work, theory and clinical. The theory portion of her course work involved textbook education in a traditional classroom setting. The clinical portion involved on-the-job training in the hospital. For the theory portion of the course work, students received letter grades, and for the clinical portion students received a satisfactory "S," unsatisfactory "U," or incomplete "I."

Under the "Academic Dismissal Policy" a student could be dismissed from the program for receipt of a clinical grade of U or a theory grade below a C, failure to meet program requirements by the end of a probationary term, receipt of an F in any required course, or the receipt of three warnings (clinical or theory). When a dismissal was forthcoming, the students were notified in writing. Finally, the faculty also maintained the following "Dismissal Policy": "The faculty reserves the right to require at any time the dismissal of a student whose health, conduct or level of achievement makes it seem inadvisable for the student to remain in the school."

In 1990, Frabotta received a D grade in Nursing 202, which resulted in academic probation under the rules. Consequently, she was required to repeat the course. She repeated the course and earned a grade of B. After two years, the probation would be removed from her record.

During her last quarter of study in the spring of 1992, Frabotta enrolled in Nursing 303, Coordination of Client Care. Her midterm grade in that course was a satisfactory S.

On June 1, 1992, which was less than two weeks prior to her scheduled graduation, she received a clinical warning in Nursing 303 from her professor.

The clinical warning identified incidents of concern and informed her that her clinical grade would be an unsatisfactory U, unless all outlined objectives were met in the remaining weeks of the course.

When Frabotta received the warning, she had only four days of clinical sessions to bring her performance to a satisfactory level; those four remaining sessions were on June 1, 2, 8, and 9. On June 2, 1992, Frabotta responded with comments on the clinical warning.

On June 5, 1992, six days prior to graduation, she was dismissed from the school under the Dismissal Policy, which she referred to as the "catchall" policy. She was not given an opportunity to demonstrate that her clinical performance had reached a satisfactory level on June 8 and 9, 1992, the remaining sessions.

Frabotta alleged that the reason for her dismissal was arbitrary and capricious. She and her classmate and friend, Janet Zagara, were the only students in ten years dismissed under the catchall dismissal policy of the school. She believed her classmate Zagara's dismissal three weeks before was an extension of a single plan to dismiss them both.

Frabotta filed an action against Meridia, alleging that her dismissal was arbitrary and capricious. Furthermore, she argued, it violated her right to due process and equal protection, deprived her of her right to continue her education, and caused her to expend an additional year to complete her education. She asked the court to order the school to readmit her with authority to take the final examination. She also sought compensatory damages in the amount of $250,000. Meridia moved for summary judgment, which was granted. This appeal followed.

■ The standard of review for an appeal from summary judgment is plenary. This court applies the same test as the trial court, which is set forth in Civ.R. 56, and we evaluate the record according to Civ.R. 56. Civ.R. 56 specifically provides that before summary judgment may be granted it must be determined that "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

■ Moreover, it is well settled that the party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265, 278; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801– 802. Doubts must be resolved in favor of the nonmovant. *Murphy v. Reynolds-*

*burg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 140. Under Civ.R. 56(E), "a nonmovant may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing there is a genuine issue for trial." *Chaney v. Clark Cty. Agricultural Soc.* (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513, 515.

This court has held that "while education is not a fundamental right, a university may not arbitrarily dismiss a student without due process of law." *Morin v. Cleveland Metro. Gen. Hosp. School of Nursing* (1986), 34 Ohio App.3d 19, 22, 516 N.E.2d 1257, 1259. The purpose of judicial relief is to assure the student fair treatment, and not for the court to reweigh or reevaluate the grades or the basis of the dismissal. See *Johnson v. Cuyahoga Cty. Community College* (1985), 29 Ohio Misc.2d 33, 34, 29 OBR 371, 371–372, 489 N.E.2d 1088, 1089–1090. See, also, *Bd. of Curators of Missouri v. Horowitz* (1978), 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124.

The United States Supreme Court has set the following standard:

"When judges are asked to review the substance of a genuinely academic decision such as this one, they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Regents of Univ. of Michigan v. Ewing* (1985), 474 U.S. 214, 225, 106 S.Ct. 507, 513, 88 L.Ed.2d 523, 532. See, also, *Willey v. Univ. of Toledo* (Mar. 12, 1993), Lucas App. No. L–92–061, unreported, 1993 WL 65241.

Courts should not intervene in academic decision-making where a student is dismissed, unless the dismissal is clearly shown to be arbitrary and capricious. *Morin,* 34 Ohio App.3d at 22, 516 N.E.2d at 1259. "As a general rule, the burden is upon the student to show the existence of arbitrariness, capriciousness, or bad faith in the grading procedure or system." *Johnson,* 29 Ohio Misc.2d at 34, 29 OBR at 372, 489 N.E.2d at 1089.

In this case, Frabotta was dismissed because of her failing performance in the clinical portion of her Nursing 303 class. Under the Academic Dismissal Policy, under which students were permitted to repeat only one nursing course, Frabotta's failing a second course was grounds for dismissal. Moreover, her instructor had the discretion to dismiss Frabotta because of her poor level of achievement under the Dismissal Policy. Thus, there is no dispute that Frabotta's dismissal was clearly an academic decision. It being an academic decision, Frabotta had the burden of proving that the decision was arbitrary and capricious.

In her first assignment of error, Frabotta argues that the dismissal was arbitrary and capricious because she was not given a reasonable opportunity to respond and correct her deficient conduct. While due process is guaranteed in academic decisions, the due process is far less stringent than that required when a person's conduct is called into question. See *Horowitz*, 435 U.S. at 86, 98 S.Ct. at 953, 55 L.Ed.2d at 132–133. Due process in the academic setting must be flexible because of the character of the decision-making involved. "Like the appraisal of artwork or the appreciation of music, grading determinations are essentially subjective and evaluative, lacking firm rules or guidelines or purely empirical data." *Johnson*, 29 Ohio Misc.2d at 34, 29 OBR at 372, 489 N.E.2d at 1090. Because of the nature of academic decisions, the denial of an opportunity for students to improve their performance or to be given a second chance is not necessarily a deprivation of due process. See *Ewing*, 474 U.S. at 227, 106 S.Ct. at 514, 88 L.Ed.2d at 533–534 (denial of a second chance to retake a test is not a denial of due process).

In this case, Frabotta was given a warning and notified that she would have four clinical sessions in which to improve her performance. After two clinical sessions, she was dismissed. Frabotta contends that she should have been allowed to perform in the two remaining clinical sessions. Based on this dismissal it is reasonable to conclude that the instructor, in her "subjective and evaluative" academic judgment, decided that Frabotta would not be able to improve in the two remaining sessions. Consequently, absent evidence showing that the instructor's inherently subjective decision was arbitrary, capricious, or made in bad faith, this court is bound to accept the decision of the instructor and sustain the trial court's ruling on the first assignment of error.

In her second assignment of error, Frabotta attacks the catchall policy of Meridia. She claims that her dismissal was arbitrary and capricious because no student had been dismissed under that policy in the last ten years. Although Frabotta believes her dismissal was a part of a "conscious preconceived" plan to dismiss her and her friend from the school, she presents no evidence of such a scheme other than her own subjective belief and the fact that her classmate and friend was dismissed under this policy. Absent some evidence of this "conscious preconceived" plan to dismiss Frabotta, this court must defer to the academic judgment of the instructor.

Accordingly, summary judgment was properly granted in favor of Meridia Huron Hospital School of Nursing.

*Judgment affirmed.*

SPELLACY, P.J., and NUGENT, J., concur.