Hart, J.
 

 The question presented is whether it was the purpose of the appellants in the purchase of the articles described in the record “to use or consume the thing transferred, directly in the production of tangible personal property [sand and gravel] for sale by * * * processing * * * [or] mining” within the scope and meaning of Sections 5546-1 and 5546-25, respectively, General Code, which sections exempt such property purchased for such purposes from the sales tax and the use tax.
 

 
 *618
 
 Specifically, the question is whether the operation of the appellants, in which the purchases in question were used and consumed, constituted “processing” or “mining” within the purview of these statutes.
 

 While Section 5546-1, clause b, General Code, includes the term “mining” within the exception tc the imposition of the sales tax, the statute does not define the term. To standardize the administration of the law and provide a definition for the term “mining,” the then Tax Commission adopted Special Sales Tax Ruling No. 96, effective May 24, 1935, which is as follows:
 

 “The term ‘mining’ as used in the definition of ‘retail sale,’ contained in Section 5546-1 of the General Code,
 
 shall include ‘quarrying/ or the extraction of minerals and clay from pits, shafts, tunnels, levels, or open excavations.
 

 “Sales of articles of tangible personal property to miners, or mine operators, where the purpose of the purchaser is
 
 to use or consume the articles purchased directly in mining, are not subject to the Ohio retail sales tax.
 
 Such sales shall include such items as mining
 
 equipment, appliances, machinery,
 
 timber, powder, dynamite, squibs, caps, fuses,
 
 shovels,
 
 and similar articles which are used directly in the operation of mining as that term is defined above.” (Italics ours.)
 

 However, effective August 21, 1941, the General Assembly incorporated in Section 5546-1, General Code, following the word “mining,” the words “including without limitation the extraction from the earth
 
 of
 
 all substances which are classed geologically as minerals.” 119 Ohio Laws, 389, 390.
 

 Appellants claim that this amendment of the statute did not change it but simply clarified its meaning, and cite and quote from 37 Ohio Jurisprudence, 774, Section 445, as follows:
 

 
 *619
 
 “The re-enactment by Congress of the same provisions after a departmental construction has been given thereto has been regarded the equivalent of an adoption and re-enactment of that construction, and as controlling in the construction of a law of doubtful meaning; and such construction generally will be followed after such re-enactment. However, legislative acquiescence in an administrative ruling is not to be inferred where such ruling has not received the stamp of final departmental approval and where it has not been shown to he so well known by the Legislature as to justify the assumption of an acceptance thereof by it.”
 

 On the other hand, the appellees claim that exemptions from taxation must be clearly made out, and point out that Section 5388, General Code, providing for the listing for taxation of machinery used in mining, did not, prior to September 6,1939, specifically include machinery used in “stone plants and gravel plants”; that effective on that date the General Assembly amended Section 5388 so as to include the words “stone plants and gravel plants”; and that by analogy such amendment demonstrates the necessity of specifically including the items of sand and gravel as being within the term “mining” in the statute here under consideration.
 

 It is true that sand or gravel deposits have not been generally recognized as mineral lands to be separately taxed as such, but the value of sand and gravel deposits near the surface, as well as coal or other deposits underneath the surface, may be and is reflected in the tax valuations placed upon the land upon which or underneath which such deposits are found. While the term “ miningv has been held to’convey the idea of extracting minerals from beneath the surface of the earth by means of tunneling and shafting
 
 (Rock House Fork Land Co.
 
 v.
 
 Raleigh Brick & Tile Co., 83 W.
 
 Va., 20,
 
 *620
 
 97 S. E., 684, 17 A. L. R., 144), other courts have held that the term has a broader significance, and is not limited in its meaning to the method of excavation.
 
 Nephi Plaster & Mfg. Co.
 
 v.
 
 Juab
 
 County, 33 Utah, 114, 93 P., 53, 14 L. R. A. (N. S.), 1043.
 

 Throughout the eastern section of this state thousands of acres of coal are mined by stripping off the surface earth above it and taking the coal from pits thus made in the same manner as the sand, and gravel were procured in the instant case. Sand and gravel deposits were formed by stone erosion and the grinding action of water currents which operated in early geological periods. Such deposits were massed by such currents, are distinctively located within well-defined areas, and, in mining terminology, are known as “placer deposits” as distinguished from veins or lodes. Placer deposits occupy the bed of an ancient river as distinguished from veins or lodes, and placer mining is a well recognized operation in the mining processes.
 

 It is a well-established doctrine that every public statute has or is supposed to have as its objective some purpose or policy whereby the public welfare is served. The primary purpose of the statute here under consideration is to encourage the production of more valuable tangible personal property for sale, itself subject to the sales tax, by exempting from the operation of such tax the purchases of property used and consumed by the producer in the production of such ultimate tangible personal property, and at the same time to avoid a species of double taxation. Hence the statute exempts sales of tangible personal property in which the purpose of the consumer is to incorporate by manufacturing, assembling, processing or refining the things transferred into tangible personal property for sale, or to use or consume the thing transferred directly in the production of tangible personal proper
 
 *621
 
 ty for sale, by manufacturing, processing, refining, mining, production of crude oil and natural gas, farming, agriculture, horticulture, or floriculture, or directly in making retail sales or directly in the rendition of a public utility service.
 

 Within the spirit and purpose of these statutes, the purchases of personal property used and consumed in the production of sand and gravel for commercial sale should be included within the exemptions thus provided.
 

 It is true, the General Assembly in 1941 (119 Ohio Laws, 390), after the sales transactions here in question occurred, amended Section 5546-1, General Code, to include within its exemptions without limitation within the meaning of the term “mining” as therein used, “the extraction from the earth of all substances which are classed geologically as minerals,” but in the opinion of the court, this amendment served to clarify the term “mining” rather than to add additions which had not theretofore in general terms been included therein.
 

 There can be no reasonable distinction whereby it may be claimed that the purchase of a steam shovel used and consumed in the process of strip-mining of coal shall be exempt from the sales tax while the purchaser of another steam shovel, identical in character and operation, shall be subject to the sales tax because it is used to uncover sand and gravel instead of coal, both products being produced for sale and subject to the incidence of the sales tax.
 

 The decision of the Board of Tax Appeals is reversed and judgment is entered in favor of the appellants.
 

 Decision reversed.
 

 Weygandt, C. J., Matthias, Zimmerman, Bell,, Williams and Turner, JJ., concur.