**HENSLEY et al., Appellants,**

v.

**TOLEDO AREA REGIONAL TRANSIT AUTHORITY et al., Appellees.**

[Cite as *Hensley v. Toledo Area Regional Transit Auth.* (1997), 121 Ohio App.3d 603.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–96–097.

Decided June 27, 1997.

604

George C. Rogers, for appellants.

Frank T. Pizza, Theodore M. Rowen, Lisa E. Pizza, Edwin A. Coy and Peter N. Lavalette, for appellee Board of Education of the Toledo City School District.

Gerald R. Kowalski, for appellee Toledo Area Regional Transit Authority.

---

Per Curiam.

This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas that granted the motions for summary judgment of defendants-appellees Toledo Area Regional Transit Authority ("TARTA") and Board of Education of the Toledo City School District ("the board"). In addition, the trial court denied the motion of plaintiffs-appellants Tamara S. Hensley et al. for summary judgment on their injunction request and denied their motion for preliminary injunction.

The relevant facts of this case are undisputed and are set forth in the trial court's decision as follows.

"On the afternoon of September 21, 1994, Christina M. Nettles, a twelve-year-old minor and student who attended East Toledo Junior High School, was struck by a tow truck while attempting to cross Woodville Road in Lucas County, Ohio, after getting off a Toledo Area Regional Transit Authority ("TARTA") bus which she had been riding home from school. [Footnote omitted.] Christina died several days later as a result of her injuries.

"In a similar incident, Matthew Minton, a student at Byrnedale Junior High School, was struck by an automobile and seriously injured on October 18, 1995, while attempting to cross Airport Highway in Lucas County, Ohio, after getting off a TARTA bus which he had been riding home from school.

"In both incidents, the TARTA buses on which Christina and Matthew had been riding were not equipped with the types of safety features and equipment required on 'school buses' by Ohio statutes and agency rules. Nor were the buses operated pursuant to certain Ohio statutes and agency rules applicable to the operation and safety of school buses, such as the requirement under R.C. 4511.75(D) that school buses operating on highways with four or more lanes of traffic receive and discharge all school children on their residence side of the highway. [Footnote omitted.]

"Instead, both Christina and Matthew were students within the Toledo City School District who were eligible to be transported to and from school on standard TARTA transit buses in accordance with an agreement entered into between the Board of Education of the Toledo City School District ('Board of Education') and TARTA. Pursuant to the terms of the agreement, TARTA provides transportation to and from school for designated students residing within the Toledo City School District on regular transit routes. Eligible students are not required to pay a fare, but carry passes issued by the Board of Education which allow the students to board and ride TARTA's buses during designated hours. TARTA invoices the Board of Education each month for the number of school days for which transportation service is provided, and is reimbursed according to a formula set forth in the agreement. The Board of Education and TARTA first entered into such an agreement in the early 1970's, and since the early 1980's there have been no substantial changes in the basic agreement other than in the formula used in calculating reimbursement. The agreement which [was in effect at the relevant times herein] commenced July 1, 1995, and end[ed] June 30, 1996."

Tamara S. Hensley, a taxpayer and the mother of Christina Nettles, and Mark A. Robinson, Special Administrator of the Estate of Christina M. Nettles, filed the original complaint in this case on September 29, 1995 on behalf of themselves

and all others similarly situated, which, in general, sought injunctive relief and damages for personal injuries. On October 5, 1995, the trial court filed an order, which, among other things, bifurcated the injunction issues for trial from the personal injury/tort relief aspects of the case. Subsequently, on November 15, 1995, after Matthew Minton was injured, an amended complaint was filed in the court below. Additional plaintiffs named in the amended complaint were Lena Ann Kutzke, for herself and as the next friend of Matthew Minton; Pat Collins, for herself as a taxpayer and as the next friend of Brittany and Brandie Collins, both public school students in the Toledo Public School District; and Bob Hartford, for himself as a taxpayer and as the next friend of Holly Hartford, a public school student in the Toledo Public School District. The defendants remained the same. The claims in the amended complaint can be summarized as follows:

"(1) Count I sought injunctive relief on behalf of Tamara Hensley, Mark Robinson, Lena Ann Kutzke, Pat Collins and Bob Hartford. Specifically, the count alleged that the Board transports approximately forty percent of its school children in its own fleet of yellow school buses which comply with state safety laws, and approximately sixty percent of its school children on TARTA buses which do not comply with R.C. 4511.75, 4511.77, 4511.771 or other statutes providing for the safe busing of school children. The count further alleged that Toledo City School children attending schools on the east side of the Maumee River ('East Toledo') are allocated none of the complying school buses owned and operated by the Board but are bused exclusively on non-complying TARTA buses. The count then alleged that the TARTA buses were in violation of the statutes which provided for the safe busing of school children and that the busing scheme violated the equal protection rights of the children who were transported on TARTA buses. Count I then demanded: (a) an order enjoining TARTA and the Board from operating buses for the transportation of nine or more school children to or from school sessions or functions unless said buses are in compliance with the statutory provisions regarding the safe operation of school buses; (b) an order enjoining the Board from making any further payment on its contract with TARTA for the transportation of school children unless such transportation is provided in buses that are in compliance with the statutory provisions regarding the safe operation of school buses; and (c) an order requiring TARTA and the Board to equip and operate all buses that carry school children to or from school sessions or functions in compliance with the statutes providing for the safe busing of school children.

"(2) Counts II and III of the amended complaint set forth claims for the personal injuries and wrongful death of Christina Nettles and alleged that as a proximate result of the negligence, willfulness and statutory violations of TARTA

and the Board, Christina Nettles suffered severe personal injuries and died. Pursuant to Counts II and III, Mark Robinson, as the administrator of Christina Nettles' estate, demanded judgment against all of the defendants.[1]

"(3) Count IV of the amended complaint set forth a claim for the personal injuries of Matthew Minton by his mother and next friend Lena Ann Kutzke. Specifically, the claim alleged that on September 28, 1995, TARTA and the Board were put on notice that the manner in which they transported school children on TARTA buses was unlawful. It then alleged that on October 18, 1995, Matthew Minton was struck by an automobile as he attempted to cross Airport Highway and his injuries were proximately caused by the Board's and TARTA's knowing, willful and wanton violation of state laws enacted for the safety of school children. Count IV then demanded injunctive relief on the grounds that if Matthew recovers and is able to return to school, he will be transported to school on a TARTA bus and has no adequate remedy at law to avoid such unlawful transportation. In addition Count IV demanded judgment for compensatory damages against TARTA and the Board jointly and severally.

"(4) Count V of the amended complaint set forth the Collins and Hartford appellants' claims for violations of their equal protection rights. Specifically, those appellants alleged that the Board has violated the equal protection rights of the children attending Toledo City School District public schools who are transported to school on TARTA buses which do not comply with the safety statutes referred to above. Count V further alleged that the Board had violated the equal protection rights of the students who are transported to school on TARTA buses because those students who are transported on yellow school buses are provided insurance coverage which is not provided to those students transported on TARTA buses. The appellants then sought a permanent injunction ordering the Board to provide public school students who attend East Toledo Junior High School with the same yellow school buses that it provides to public school students attending McTigue and DeVeaux Junior High Schools and a judgment against the Board for compensatory damages." (Footnote added.)

Subsequently, in an order dated November 1, 1995, the trial court reaffirmed its order of October 5, 1995, and ordered that the injunctive relief actions be bifurcated from the personal injury/tort relief portions of the litigation.

---

1. Kevin High and Don Granger, d.b.a. Granger Automobile, were also named defendants. The amended complaint alleged that Kevin High, while acting in the scope of his employment with Don Granger, d.b.a. Granger Automobile, struck Christina Nettles as she crossed the street. The amended complaint further alleged that High operated the Granger vehicle at an excessive rate of speed and failed to stop at least ten feet from the rear of a stopped school bus. Because these defendants were subsequently voluntarily dismissed by appellants pursuant to Civ.R. 41(A), they will not be discussed in this decision.

In the court below, appellants filed a motion for summary judgment on their requests for injunctive relief. In addition, and despite the trial court's order bifurcating the injunction and tort claims, TARTA and the board filed motions for summary judgment on *all* of the claims set forth in the complaint. Nevertheless, in these motions and in the subsequent motions regarding summary judgment, TARTA and the board never specifically addressed the issue of any common-law negligence claims against them. On January 24, 1996, the court held a hearing on TARTA and the board's summary judgment motions and, in so doing, also addressed the issues raised in appellants' motion. At that hearing, and in the post-hearing briefs that were filed by the parties, the board asserted that summary judgment in its favor on the injunctive relief claims would resolve all claims against it. In addition, TARTA asserted that appellees had not pled a general claim of negligence against it, that appellants' claims against it were completely dependent on the success of their claims based on the statutory and constitutional violations, and that because appellants' statutory claims could not succeed neither could the negligence claims. On March 26, 1996, the trial court filed an opinion and judgment entry that thoroughly addressed the issues raised by the parties and granted TARTA and the board summary judgment on all of appellants' claims. In particular, the court held that TARTA was a separately recognized and authorized means of providing transportation for students to and from school, that TARTA was required to comply only with R.C. 4511.78, not the safety statutes covering school buses, and that the board's transportation of some school children by way of yellow school buses and others by way of TARTA buses did not violate appellants' equal protection rights. The court further determined that appellants' negligence claims were entirely dependent upon the statutory violations claims and were therefore defeated by the court's ruling on those claims. As such, the court found that there remained no genuine issue of material fact and granted summary judgment in favor of the board and TARTA. From that judgment, appellants have raised the following assignments of error:

"I. The trial court erred in overruling plaintiff's [*sic*] motion for summary judgment enjoining TARTA and the Board of Education of the Toledo City School District from transporting Toledo school children on TARTA buses.

"II. The trial court erred in overruling plaintiffs' motion for summary judgment for injunctive and monetary relief for its deprivation of their rights to equal protection, treatment and benefits accorded other children similarly situated who are transported in 'yellow' school buses that provide substantially greater safety to school children so transported.

"III. The trial court erred in granting summary judgment to TARTA and the Board of Education on their [*sic*] claims for negligence.

"IV. The trial court erred in granting summary judgment to TARTA and the Board of Education on plaintiff's [*sic*] claims for injunctive and monetary relief on the same grounds as argued in assignments of error 1 and 2."

In their first assignment of error, appellants challenge the trial court's conclusion that, when students are transported to and from school on a TARTA bus, that bus is not a "school bus" as that term is defined by R.C. 4511.01(F), is not subject to the safety requirements covering school buses set forth in the Ohio Revised Code and Ohio Administrative Code, and is subject only to the requirements set forth in R.C. 4511.78.

We first note that in reviewing a ruling on a motion for summary judgment, we must apply the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).

 This court has fully and carefully reviewed the record and law that is applicable to the issues raised under this assignment of error and finds that section III of the trial court's opinion and judgment entry is an appropriate and lawfully correct discussion of the facts and law involved in this dispute. As to the first assignment of error, we therefore adopt section III of the opinion of the Honorable J. Ronald Bowman (see Appendix A) and find appellants' first assignment of error not well taken.

Finding under the first assignment of error that TARTA is a mass transit system which is a separately recognized and authorized means of transporting school children, and finding that TARTA is not required to comply with the safety statutes applicable to school buses, we must determine under the second assignment of error whether the board's use of TARTA buses to transport approximately sixty percent of the Toledo City School students violates those students' and their taxpaying parents' rights to equal protection.

In support of their argument that the trial court erred in granting appellees summary judgment on appellants' equal protection claims, appellants argue that the board has no rational basis for providing yellow school bus transportation to some students and TARTA transportation to others and that the statutory scheme behind the board's varying treatment of different students is not supported by a rational basis. Appellants assert that the undisputed facts reveal that the yellow school buses provide a safer means of transportation to and from school than do the TARTA buses because the yellow buses comply with the safety statutes discussed above. Appellants further contend that the children who are

transported to and from school on yellow buses are provided with medical payments and uninsured motorist coverage insurance that do not apply to students being transported on TARTA buses. Appellants contend that under the Equal Protection Clauses of the Ohio and United States Constitutions, they have a right to the same safety standards and insurance benefits that are provided to those students who are transported on yellow school buses. In opposition, the board asserts that the undisputed evidence reveals that with the use of TARTA buses, the board is able to transport many more students than required under R.C. 3327.01, and that such transportation is accomplished in an efficient and economical manner. Accordingly, the board contends that there is a rational basis for allocating its resources as it does. Finally, the board argues that appellants failed to meet their burden of producing evidence to establish the irrationality of the board's policy regarding the transportation of Toledo City School students.

The statutory scheme discussed under the first assignment of error clearly allows a school system to transport its students by both school buses and mass transit systems. We therefore must determine whether that statutory scheme or the board's application of it is violative of appellants' rights to equal protection.

Section 2, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution guarantee every person equal protection under the law. Both constitutional provisions place the same limits on governmental classifications, *State ex rel. Nyitray v. Indus. Comm.* (1983), 2 Ohio St.3d 173, 175, 2 OBR 715, 716–717, 443 N.E.2d 962, 964, and require that no person or class of persons shall be denied the protection afforded by laws to other persons or classes in like circumstances. *Toledo v. Wacenske* (1994), 95 Ohio App.3d 282, 287, 642 N.E.2d 407, 410, citing *Nordlinger v. Hahn* (1992), 505 U.S. 1, 112 S.Ct. 2326, 120 L.Ed.2d 1. In *Toledo, supra,* at 287, 642 N.E.2d at 410, this court stated:

"In determining whether a statute or ordinance violates the right to equal protection, a court must initially determine whether the class distinction drawn involves a suspect class or fundamental right. *Roseman v. Firemen & Policemen's Death Benefit Fund* (1993), 66 Ohio St.3d 443, 447 [613 N.E.2d 574, 577]. If no suspect class or fundamental right is involved, the classification is subject to a 'rational basis' scrutiny. *Id.* Under this standard, the classification does not violate equal protection if it bears a rational relationship to a legitimate governmental interest. *Id.*"

In the present case, it is undisputed that the class distinction complained of, *i.e.,* unequal transportation benefits, involves neither a suspect class nor a fundamental right. Accordingly, the statutory scheme must be upheld if it bears a rational relationship to a legitimate governmental interest. Finally, it is

well established that all legislative acts are presumed to be constitutional, *Adamsky v. Buckeye Local School Dist.* (1995), 73 Ohio St.3d 360, 361, 653 N.E.2d 212, 213–214, and, when no fundamental right or suspect class is implicated, the burden is on the one challenging the statutory scheme to prove its unconstitutionality beyond a reasonable doubt. *Roosevelt Properties Co. v. Kinney* (1984), 12 Ohio St.3d 7, 13, 12 OBR 6, 11–12, 465 N.E.2d 421, 426–427.

 We will first address this issue as it relates to the transportation services themselves. As set forth above, pursuant to R.C. 3327.01, the board is *required*, at a minimum, to provide transportation to Toledo Public School students in grades kindergarten through eight who live more than two miles from the school they attend and *may* provide transportation to students in grades nine through twelve. Under the present system of utilizing both board-owned yellow school buses and TARTA buses, the board is able to provide transportation to students in grades kindergarten through twelve who live more than one mile from the school they attend. In the proceedings below, the affidavit of David B. Decsman, the Director of Transportation for the Toledo Public Schools, was filed in support of the board's briefs and memoranda. In his affidavit, Decsman stated:

" * * * it is more economical to transport students on TARTA. The fiscal efficiency of transporting many students via TARTA allows Toledo Public Schools to exceed the State minimum mandates for transporting students to and from school. Absent such an economically efficient means of transporting students, Toledo Public Schools does not currently have sufficient fiscal, human or equipment resources to enable it to exceed the minimum transportation requirements under R.C. 3327.01."

In *Novak v. Revere Local School Dist.* (1989), 65 Ohio App.3d 363, 583 N.E.2d 1358, the Ninth District Court of Appeals, interpreting a different provision of R.C. 3327.01, held that the state had a legitimate interest in providing a means of access to educational facilities for students, while not unduly burdening the resources of the school district. We agree. In the present case, the Toledo School District, by using a combination of both board-owned yellow school buses and mass transit system buses, is able to provide a means of access to school to many more students than it would be able to accommodate if it used only the yellow school buses. Absent this system, the very taxpayers that are now challenging the transportation system would be required to find alternate methods of transportation for their children once those children reached the ninth grade. Similarly, children in grades kindergarten through eight who lived between one and two miles from school would be required to find alternate methods of transportation. A thorough and efficient system of common schools is a legitimate state purpose and, more importantly, is mandated by Section 2, Article VI of the Ohio Constitution, as was recently addressed in *DeRolph v.*

*State* (1997), 78 Ohio St.3d 193, 677 N.E.2d 733, the syllabus. In our view, the board's use of both its own yellow school buses and TARTA buses ensures that the maximum number of students is transported to school and promotes a thorough and efficient system of common schools. Accordingly, we do not find that the board's use of TARTA to transport approximately sixty percent of its students or the statutory scheme behind that use violates the Equal Protection Clauses of the Ohio and United States Constitutions.

Appellants further assert that the board provides medical payments and uninsured motorist coverage insurance to students who ride the yellow school buses but does not provide that same coverage to students who ride the TARTA buses. This difference in treatment, appellants contend, violates the equal protection rights of the children who ride the TARTA buses and of their taxpaying parents.

 By raising this issue, appellants essentially asked the trial court and now ask this court to declare the rights of the parties under a contract of insurance that exists between the board and Nationwide Insurance Company. Appellants, however, never filed a complaint for declaratory judgment in the matter below. In addition, appellants have not alleged that they were denied coverage under such policy. Furthermore, no evidence was submitted in the court below regarding any insurance that may have been procured by TARTA, arguably with income earned through its contract with the board, to cover students who ride TARTA buses. Such evidence is essential to a determination of whether students who ride TARTA buses are afforded less insurance protection than students who ride board-owned buses. Given these factors, we cannot say that appellants established beyond a reasonable doubt that students who ride TARTA buses are treated differently than students who ride board-owned buses on the issue of insurance coverage. Accordingly, reasonable minds could only conclude that appellants' rights to equal protection had not been violated and that the trial court did not err in granting appellees summary judgment on the equal protection claims. The second assignment of error is therefore not well taken.

In their third assignment of error, appellants assert that the trial court erred in granting summary judgment to TARTA and the board on appellants' claims based on general negligence. Initially, appellants argue that the court erroneously granted appellees summary judgment on the personal injury and wrongful death claims because in its orders of October 5 and November 1, 1995, the court ordered that the injunctive relief claims be bifurcated from the tort claims and that the tort claims be tried at a later time. More specifically, appellants contend that their amended complaint set forth a claim against TARTA based on TARTA's duty as a common carrier, and a claim against the board based on the fact that while the students were being transported by TARTA, the board stood

*in loco parentis* and thus had a duty to transport the children safely. Appellants further contend that summary judgment on the negligence claims was improper because the board and TARTA failed to meet their burden under Civ.R. 56(C) of identifying an element that was missing from appellants' claims.

In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274, the Supreme Court of Ohio clarified the requirements under Civ.R. 56(C) when a party files a motion for summary judgment:

"Accordingly, we hold that a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." (Emphasis *sic.*)

In the proceedings below, TARTA and the board moved for summary judgment on *all* of appellants' claims against them. In their briefs in support of summary judgment, however, they never specifically addressed any general tort claims that appellants had arguably asserted against them. At the hearing on the summary judgment motions, however, it was clear that the board and TARTA believed that appellants had asserted claims only against them based on alleged statutory and constitutional violations and that the bifurcation applied only to defendants High and Granger. In their post-hearing briefs, however, appellants expressed their understanding that they had in fact set forth basic negligence claims against TARTA and the board that, pursuant to the trial court's bifurcation order, were to be tried at a later time. Based on this understanding, appellants stated that they had not completed discovery on that issue and needed additional discovery before they could definitively address the issue. In its opinion and judgment entry, the trial court noted that TARTA and the board had specified in their summary judgment motions that they were requesting summary judgment on all of appellants' claims. The court then reviewed the merits of appellees' motions and held that appellants had not made any "specific allegation

anywhere in their amended complaint that TARTA, as a common carrier, violated a common law duty of care to its passengers, nor is any reference made to any 'common carrier' duty of care in the amended complaint or plaintiffs' written arguments, with the exception of their post-hearing brief." The court further found no reference in the amended complaint "regarding any possible liability on behalf of the Board of Education premised upon *in loco parentis* in any of their written arguments, with the exception of their post-hearing brief." Finally, the court found that appellants had failed to "set forth, by affidavit or otherwise, specific facts sufficiently raising a genuine issue of material fact as to whether such duties, if owed, were breached."

 This assignment of error requires us to determine whether appellants alleged any common-law actions of negligence against either the board or TARTA in their amended complaint. In analyzing the complaint, we note that "with the adoption of the Civil Rules, Ohio has progressed from 'fact pleading' to 'notice pleading.'" *Salamon v. Taft Broadcasting Co.* (1984), 16 Ohio App.3d 336, 338, 16 OBR 385, 387, 475 N.E.2d 1292, 1295. Accordingly, "[u]nder Civ.R. 8(A) and (E), a claim should concisely set forth only those operative facts sufficient to give 'fair notice of the nature of the action * * *.'" *Id.*, quoting *DeVore v. Mut. of Omaha Ins. Co.* (1972), 32 Ohio App.2d 36, 38, 61 O.O.2d 21, 22, 288 N.E.2d 202, 203–204. In order to set forth a negligence claim, however, a complaint must allege "(1) that defendant had a duty to protect plaintiff from injury, (2) that defendant failed to discharge that duty, and (3) that defendant's breach of that duty proximately caused plaintiff's injury." *James v. Wright* (1991), 76 Ohio App.3d 493, 496, 602 N.E.2d 392, 394, citing *Wellman v. E. Ohio Gas Co.* (1953), 160 Ohio St. 103, 51 O.O. 27, 113 N.E.2d 629.

 Initially we note that throughout the entire amended complaint, plaintiffs specifically allege only that TARTA and the board have duties pursuant to the statutes enacted for the safe transportation of school children. With respect to the personal injury and wrongful death allegations regarding Christina Nettles, the amended complaint avers in pertinent part:

"14. On September 21, 1994 at approximately 2:18 p.m., the TARTA bus driver, acting in the scope of his employment with TARTA and its agreement with the Board of Education, and as a school bus driver pursuant to R.C. 4511.01(F), negligently, wilfully, and in violation of R.C. 4511.75(D), failed to discharge Christina Nettles on her residence side of street while stopping and discharging her at approximately 1112 Woodville Road, a highway with four or more traffic lanes.

"15. On the same date and time the said school bus driver also negligently, wilfully, and in violation of R.C. 4511.75(B) failed to actuate an extended stop warning sign while stopping to discharge Christina Nettles.

"16. The TARTA school bus from which Christina Nettles was discharged on said date and time negligently, wilfully, and in violation of statutory requirements did not have the amber and red visual signals or the extended stop sign required by R.C. 4511.75(B) nor did it have the words 'school bus' and 'stop' marked thereon as required by R.C. 4511.77.

" * * *

"18. As a proximate result of the negligence, willfulness, and the statutory violations of the defendants, Christina Nettles suffered severe personal injuries in the collision on September 21, 1994 with pain and mental anguish and medical bills exceeding $121,018.77.

" * * *

"20. As a proximate result of the negligence and the statutory violations of the defendants, Christina Nettles died eight days later on September 29, 1994 as a result of her injuries."

Paragraphs 15 and 16 clearly allege only statutory violations that, under the first assignment of error, we have determined are not valid. Although inarticulately, the fourteenth paragraph arguably alleges that the TARTA bus driver, aside from violating R.C. 4511.75(D), violated a duty in its discharge of Christina Nettles from the bus. However, nowhere in the complaint is there any allegation of a duty owed by TARTA above and beyond the statutory duties discussed above. Similarly, nowhere in the complaint do appellants set forth any duties owed by the board to Christina Nettles above and beyond the statutory duties alleged.

We must now determine whether appellants asserted a basic claim for negligence against TARTA or the board with regard to the injuries sustained by Matthew Minton. The relevant paragraphs of the amended complaint are found in Count IV and read as follows:

"26. Defendants, Board of Education and TARTA, were put on notice on September 28, 1995 that the transportation of Toledo School District public school children to or from school sessions in TARTA buses was unlawful, TARTA not meeting any exemption in the Ohio Revised Code from state laws regarding its non-complying buses.

"27. On October 18, 1995 in knowing and willful and wanton violation of state law the Board of Education authorized and TARTA transported Matthew Minton from a school session at Byrnedale Junior High School and dropped him off at a

stop on Airport Highway, a two lane street at such location, on a side of the highway across from his residence, and *the TARTA bus driver in violation of state laws requiring him and the bus to stop traffic and wait until the students crossed the highway to their residence side*, left Matthew Minton to cross said highway without protection.

"28. As a direct and proximate cause of TARTA's and the Board of Education['s] knowing and willful and wanton violation of state laws enacted for the safety of school children, Matthew Minton was struck by an automobile as he attempted to cross Airport Highway to his residence *without the protection of stopped traffic for a school bus disembarking students*." (Emphasis added.)

Again, as with the allegations regarding Christina Nettles, appellants failed to allege any common-law duty that TARTA or the board owed to Matthew Minton but, rather, phrased all of their allegations in terms of statutory duties and violations.

Accordingly, appellants' allegations against appellees in the amended complaint were entirely dependent on perceived statutory and constitutional violations and appellants did not assert any common-law negligence claims against appellees. As such, no genuine issue of material fact remained with respect to appellants' alleged negligence claims and the trial court properly granted appellees summary judgment. The third assignment of error is therefore not well taken.

Finally, in their fourth assignment of error, appellants restate the arguments raised under the first and second assignments of error but limit the arguments to their claims for monetary relief. Regardless of the relief sought, the merits of the underlying arguments remain the same. Because we have found these arguments not well taken under the first and second assignments of error, we find the fourth assignment of error also not well taken.

On consideration whereof, the court finds that substantial justice has been done the parties complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellants.

*Judgment affirmed.*

HANDWORK and GLASSER, JJ., concur.

SHERCK, J., dissents.

SHERCK, Judge, dissenting.

I concur with the majority's handling of appellants' first, second, and fourth assignments of error; I concur, in part, and dissent, in part, with the majority's handling of appellants' third assignment of error.

In my view, appellants, Tamara S. Hensley and Mark A. Robinson, successfully pled their common-law negligence and wrongful death claims regarding Christina Nettles against TARTA and the board.

I would reverse and remand to the trial court for further consideration of those issues only.

## APPENDIX A

### IN THE COURT OF COMMON PLEAS, LUCAS COUNTY, OHIO

TAMARA S. HENSLEY, et al., Plaintiffs,

vs.

TOLEDO AREA REGIONAL TRANSIT AUTHORITY, et al., Defendants.

Case No. CI95-2710

OPINION AND JUDGMENT ENTRY

J. RONALD BOWMAN, Judge.

I

\* \* \*

II

\* \* \*

III

To paraphrase The Honorable Robert L. Marrs,[2] the first question before the Court is essentially this: when students are transported to and from school on a Toledo Area Regional Transit Authority bus, is that bus subject only to the requirements set forth in R.C. 4511.78? Or, is it a "school bus" as defined in R.C. 4511.01(F) and therefore subject to the statutory provisions and agency rules regarding the safety and operation of school buses?[3] [Footnotes renumbered throughout.]

---

2. Judge Marrs addressed questions similar to the ones raised by the parties herein in *Ganguli v. Southwest Ohio Regional Transit Authority* ([file date illegible]), Hamilton C.P. No. A–7908616, unreported.

3. See, *e.g.,* R.C. 4511.75(B) (requiring every school bus to be equipped with amber and red visual signals meeting the requirements of R.C. 4511.771 as well as requiring an automatically extending stop warning sign); R.C. 4511.75(D) (requiring school buses operating on divided highways or on highways with four or more lanes of traffic to receive and discharge school

A

First, TARTA asserts and the Court agrees that TARTA is a "regional transit authority" created under R.C. 306.30 to R.C. 306.53, inclusive.[4] Plaintiffs argue that, because a regional transit authority is not one of the four types of transit systems whose buses are specifically excluded from the definition of "school bus" under R.C. 4511.01(F) and the buses in question otherwise meet the provisions of the statute, those TARTA buses which provide transportation for students to and from school are therefore "school buses."

R.C. 4511.01 states in pertinent part:

"As used in this chapter and in Chapter 4513 of the Revised Code:

"* * *

"(F) 'School bus' means every bus designed for carrying more than nine passengers which is owned by a public, private, or governmental agency or institution of learning and operated for the transportation of children to or from a school session or a school function, or owned by a private person and operated for compensation for the transportation of children to or from a school session or a school function, provided 'school bus' does not include a bus operated by a municipally owned transportation system, a mass transit company operating exclusively within the territorial limits of a municipal corporation, or within such limits and the territorial limits of municipal corporations immediately contiguous to such municipal corporation, nor a common passenger carrier certified by the public utilities commission unless such bus is devoted exclusively to the transportation of children to and from a school session or a school function, and 'school bus' does not include a van or bus used by a licensed child day-care center or type A family day-care home to transport children from the child day-care center or type A family day-care home to a school if the van or bus does not have more than fifteen children in the van or bus at any time."

Although TARTA readily admits it is not "a municipally owned transportation system, a mass transit company operating exclusively within the territorial limits of a municipal corporation, or within such limits and the territorial limits of municipal corporations immediately contiguous to such municipal corporation, nor a common passenger carrier certified by the public utilities commission," both

---

children on their residence side of the highway); R.C. 4511.75(E) (no school bus driver shall start his or her bus until after any child who may have alighted therefrom has reached a place of safety on his or her residence side of the road); and R.C. 4511.77 (requiring school buses to be painted national school bus chrome number two and marked on the front and rear with the words "school bus" in black lettering as prescribed therein).

**4.** See Toledo City Ordinance 818–70 and the amendments thereto.

TARTA and the Board of Education vehemently deny that those TARTA buses which transport students to and from school fall within the definition of "school bus" under R.C. 4511.01(F). Defendants assert that the only statutory provision which is applicable to TARTA in this case is R.C. 4511.78, which states:

"(A) As used in this section:

"(1) 'Mass transit system' means any county transit system, regional transit authority, regional transit commission, municipally owned transportation system, mass transit company operating exclusively within the territorial limits of a municipal corporation, or within such limits and the territorial limits of municipal corporations immediately contiguous to such municipal corporation, and any common passenger carrier certified by the public utilities commission, that provides transportation for children to or from a school session or a school function.

"(2) 'Bus' means every motor vehicle designed for carrying more than nine passengers and used for the transportation of persons, but does not mean any school bus as defined in section 4511.01 of the Revised Code.

"(B) Whenever a mass transit system transports children to or from a school session or school function, the mass transit system shall provide for:

"(1) Periodic safety inspections of all buses used to provide transportation service. The inspections shall be based on rules adopted by the public utilities commission under Chapters 4921. and 4923. of the Revised Code to ensure the safety of operation of motor transportation companies and private motor carriers.

"(2) The safety training of all drivers operating buses used to provide transportation service;

"(3) The equipping of every bus with outside rearview mirrors meeting the motor carrier regulations for bus equipment adopted by the federal highway administration. No exclusions from this requirement granted under the federal regulations shall be considered exclusions for the purposes of this division."

Defendants argue that a plain reading of R.C. 4511.78 clearly provides that those TARTA buses which transport children to and from school do not fall within the definition of a "school bus." Therefore, the statutory provisions regarding the safety and operation of school buses are inapplicable. Plaintiffs counter that R.C. 4511.78(A)(2) specifically retains the definition of "school bus" set forth in R.C. 4511.01(F), and that the statute merely *adds* safety requirements for those buses which are not defined as "school buses." (Plaintiffs' Motion for Summary Judgment at page 12.)

B

The primary purpose of the courts in the interpretation or construction of a statute is to give effect to the intention of the General Assembly, as gathered from the provisions enacted, by the application of well-settled rules of interpretation. *State ex rel. Shaker Heights Pub. Library v. Main* (1948), 83 Ohio App. 415, 38 O.O. 464, 80 N.E.2d 261. When determining a statute's legislative intent, "a court must first look to the language of the statute itself * * *." *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 65 O.O.2d 296, 304 N.E.2d 378. " * * * If that inquiry reveals that the statute conveys a meaning which is clear, unequivocal and definite, at that point the interpretive effort is at an end and the statute must be applied accordingly." *Id.* See, also, *Sears v. Weimer* (1944), 143 Ohio St. 312, 28 O.O. 270, 55 N.E.2d 413 (unambiguous statutes are to be applied, not interpreted).

R.C. 4511.78 *on its face* applies to the transportation of school children to or from a school session or school function by a mass transit system. Without intending to be redundant, R.C. 4511.78 specifically provides that, as used in that section of the Revised Code: (1) "mass transit system" means any "regional transit authority" that provides transportation for children to or from a school session or a school function; (2) "bus" does not mean any school bus as defined in R.C. 4511.01; and (3) whenever a mass transit system transports children to or from a school session or school function, it shall provide for periodic safety inspections of all buses used to provide transportation service, the safety training of all drivers operating buses used to provide transportation service, and the equipping of every bus with outside rearview mirrors.

The clear and unambiguous language of R.C. 4511.78 does *not* lend itself to plaintiffs' interpretation that it "specifically retains the definition of 'school bus' under R.C. 4511.01(F)." (Plaintiffs' Motion for Summary Judgment at page 12.) Such an interpretation is difficult, if not impossible, to reconcile with the plain wording of the statute. Though R.C. 4511.01 clearly and unambiguously provides that the definition of "school bus" in division (F) is applicable to both Chapter 4511 and Chapter 4513 of the Revised Code, R.C. 4511.78 just as clearly and unambiguously provides that, as used in *that* section, "bus" does *not* mean *any* school bus as defined in R.C. 4511.01. If the General Assembly intended that the definition of "school bus" or any statutory provision regarding the safety and operation of a school bus was to apply to any provision of R.C. 4511.78, it could just as easily have said so in the statute. However, no such reference may be found. In fact, the term "school bus" is conspicuously absent from the text of the statute, with the sole exception of its use in division (A)(2).

In view of the above, the Court finds that, whenever the Toledo Area Regional Transit Authority provides transportation for children to or from a school session or a school function, said mass transit system is subject to R.C. 4511.78, as applied, and such buses are therefore not "school buses" as defined in R.C. 4511.01(F). Further, this Court finds that, as R.C. 4511.75, 4511.77 and 4511.771 pertain only to school buses, said statutory provisions are therefore inapplicable. R.C. 4511.78 on its face only requires a mass transit system to provide those safety measures which are enumerated therein when transporting school children. Accordingly, as to this portion of the arguments of the respective parties, the Court finds that there exists no genuine issue of material fact and that defendants TARTA and the Board of Education are entitled to summary judgment as a matter of law.

## C

### 1

Assuming the intention of the General Assembly is unclear, the courts, in determining the intention of the legislature, are under a duty, if the language of a statute fairly permits, to construe it so as to avoid an absurd or grotesque result. *State ex rel. Cooper v. Savord* (1950), 153 Ohio St. 367, 41 O.O. 396, 92 N.E.2d 390. A court has no legislative authority and "should not make their office of expounding statutes a cloak for supplying something omitted from an act by the General Assembly." *State ex rel. Foster v. Evatt* (1944), 144 Ohio St. 65, 29 O.O. 4, 56 N.E.2d 265. "The question is not what did the General Assembly intend to enact, but what is the meaning of that which it did enact." *Id.* There exists no authority under the rules of statutory construction to add to, enlarge, supply, expand, extend, or improve the provisions of a statute to meet a situation not provided for. *Id.* Moreover, where a statute defines terms used therein which are applicable to the subject matter affected by the legislation, such definition controls in the application of the statute. *Terteling Bros. v. Glander* (1949), 151 Ohio St. 236, 39 O.O. 60, 85 N.E.2d 379.

There is no question that a "regional transit authority" is not one of the four specifically enumerated transportation systems whose buses are excluded from the definition of "school bus" under R.C. 4511.01. However, given the express language of R.C. 4511.78, it would seem difficult to conclude, and indeed the Court does not conclude, that the General Assembly intended that a regional transit authority bus that provides transportation for children to or from school may still be a "school bus" as defined in R.C. 4511.01. If that was the legislature's intent, it is not clearly expressed in the text of the statute. To the contrary, as discussed above, the only time the General Assembly did use the

term "school bus" was when it specifically said that, as used in R.C. 4511.78, "bus" does *not* mean *any* school bus as defined in R.C. 4511.01.

Further, if the General Assembly meant for the statutory provisions regarding the safety and operation of school buses to apply to mass transit system buses which transport children to and from school, the wording of the statute does not clearly express such a manifest intent. Instead, the express language of the statute requires that a mass transit system *shall* provide for safety inspections, driver safety training, and outside rearview mirrors. Nothing more. The Court may not speculate as to whether or not the General Assembly intended that a mass transit system provide for any additional safety requirements under R.C. 4511.78 other than those which the statute on its face clearly mandates. "It is a well established doctrine that every public statute has or is supposed to have as its objective some purpose or policy whereby the public welfare is served." *Bailey v. Evatt* (1944), 142 Ohio St. 616, 27 O.O. 534, 53 N.E.2d 812, paragraph one of the syllabus. When the statutory provision in which the General Assembly expresses that purpose or policy is clear and unambiguous, the Court may not expand or improve upon its terms.

2

Again, assuming the intent of the General Assembly to be unclear, the court, in determining the intention of the legislature, may consider among other matters:

"(A) The object sought to be attained;

"(B) The circumstances under which the statute was enacted;

"(C) The legislative history;

"(D) The common law or former statutory provisions, including laws upon the same or similar subjects;

"(E) The consequences of a particular construction;

"(F) The administrative construction of the statute." R.C. 1.49.

a

First, it is evident from the proposed text of Sub.H.B. No. 234 as introduced in 1975, as well as the committee notes regarding the bill, that members of the General Assembly had in mind the following:

"Present law relating to school bus operation, equipment, identification, and the conduct of drivers of other vehicles in regard to such buses, does not apply to a transit-type bus that is being used for the transportation of school children, unless the bus is used exclusively for that purpose and therefore qualifies as a 'school bus' under the school bus definition." (Committee Notes to Sub. H.B. No. 234 as introduced January 30, 1975.)

Further, the stated purpose of the bill when introduced, as reported by the H. Hwys. & Hwy. Safety Committee, was "to provide children riding to or from school on public transit buses with the *same* protection in traffic that current law extended to children on school buses." (Emphasis added.) (Committee Notes to Sub.H.B. No. 234 as reported by the H. Hwys. & Hwy. Safety Committee July 17, 1975.)

In pertinent part, the bill as introduced would have enacted R.C. 4511.772, which would provide that every transit bus used to transport children to and from school pursuant to a contract with a local board of education would be defined as a "school transit bus" whenever, but only whenever, such bus was being used for that purpose. At those times, the bus would be required to be equipped and operated in a manner similar to a school bus. In addition, the bill would amend R.C. 4511.01 to include regional transit authorities as one of the types of transit systems excluded from that section of the Revised Code. This was premised on the observation that such buses were not specifically so excluded and there was concern that they may be regarded as school buses when used to transport school children, even though such transportation was incidental to their use for other transit purposes. (Committee Notes to Sub.H.B. No. 234 as reported by the H. Hwys. & Hwy. Safety Committee July 17, 1975.)

The bill, however, went through several changes before the General Assembly adopted the version which was enacted as R.C. 4511.78. The stated purpose of Sub.H.B. No. 234, as reported by the S. Transportation & Local Gov't., was "to provide children riding to or from school on public transit buses with protection *similar* to that extended under current law to children on school buses." (Emphasis added.) (Committee Notes to Sub.H.B. No. 234 as reported by the S. Transportation & Local Gov't. April 6, 1976.) The version of Sub.H.B. No. 234 which eventually was enacted as R.C. 4511.78 states that it is a bill:

"To enact section 4511.78 of the Revised Code to require that mass transit systems transporting school children provide for bus safety inspections, bus driver safety training, and the use on buses of rear-view mirrors meeting federal equipment standards."

Plaintiffs are correct in that the version of the bill which was adopted and enacted as R.C. 4511.78 did not add "regional transit authorities" as one of the transit systems whose buses are specifically excluded from the definition of "school bus" on the face of R.C. 4511.01(F). However, when considering the stated purpose and language of the successive versions of the bill, in light of the express language of the version enacted as R.C. 4511.78, the Court does not agree with plaintiffs' assertion that the General Assembly intended that regional transit authorities such as TARTA "cannot provide transportation of school

children as an exception to school bus operation unless they would also fit within one of the four recognized exceptions"[5] under R.C. 4511.01(F).

Again, an unambiguous statute is to be applied, not interpreted. *Weimer, supra.* The express language of R.C. 4511.78 as enacted may not subsequently be massaged by the Court to supply provisions the General Assembly omitted from its text. Even assuming that R.C. 4511.78 is ambiguous, it would seem that the intent of the General Assembly when it enacted R.C. 4511.78 is rather clear, *i.e.,* what are *the* safety measures a mass transit system must provide when it transports children to and from school, not what are the *additional* safety measures it must provide.

b

R.C. 3327.01 provides in pertinent part:

"Notwithstanding division (D) of section 3311.19 and division (D) of section 3311.52 of the Revised Code, this section and sections 3327.011 and 3327.012 of the Revised Code do not apply to any joint vocational or cooperative education school district.

"In all city, local, and exempted village school districts where resident school pupils in grades kindergarten through eight live more than two miles from the school for which the state board of education prescribes minimum standards pursuant to division (D) of section 3301.07 of the Revised Code and to which they are assigned by the board of education of the district of residence or to and from the nonpublic school which they attend the board of education *shall* provide transportation for such pupils to and from such school except when, in the judgment of such board, confirmed by the state board of education, such transportation is unnecessary or unreasonable.

"In all city, local, and exempted village school districts the board *may* provide transportation for resident school pupils in grades nine through twelve to and from the high school to which they are assigned by the board of education of the district of residence or to and from the non-public high school which they attend for which the state board of education prescribes minimum standards pursuant to division (D) of section 3301.07 of the Revised Code.

"In determining the necessity for transportation, availability of facilities and distance to the school shall be considered.

"* * *

"The cost of any transportation service authorized by this section shall be paid first out of federal funds, if any, available for the purpose of pupil transportation,

---

5. Plaintiffs' Post-Hearing Memorandum at page 4.

and secondly out of state appropriations, in accordance with regulations adopted by the state board of education.

"No transportation of any pupils shall be provided by any board of education to or from any school which in the selection of pupils, faculty members, or employees, practices discrimination against any person on the grounds of race, color, religion, or national origin." (Emphasis added.)

Thus, at a minimum, the Board of Education is required to provide transportation to Toledo Public School children in grades kindergarten through eight who live more than two miles from school, though it has the option of providing transportation to students in grades nine through twelve.

Chapter 3301–83 of the Ohio Administrative Code provides rules and regulations promulgated by the Ohio Department of Education regarding the operation and safety of pupil transportation. Specifically, Ohio Arm.Code 3301–83–19 reads in pertinent part as follows:

"3301–83–19. AUTHORIZED VEHICLES FOR TRANSPORTATION OF PUPILS TO AND FROM SCHOOL AND SCHOOL–RELATED EVENTS

"(A) School buses

"All vehicles designed to carry more than nine passengers, not including the driver, and used to transport students to and from school or school-related events shall meet or exceed all federal regulations and the Ohio school bus minimum construction standards (division (F) of section 4511.01 of the Revised Code).

"(B) Public transit vehicles

"This includes vehicles owned and operated by regional transit authorities or community transit authorities, or which are privately owned, under contract with a board of education or county board of mental retardation and developmental disabilities and operated on routes designed for the purpose of transporting fare-paying passengers and eligible students simultaneously."

Division (A) of Ohio Adm.Code 3301–83–19 not only provides that "school buses" are authorized vehicles for transportation of pupils to and from school and school-related events, it specifically requires under that division that "[a]ll vehicles designed to carry more than nine passengers, not including the driver, and used to transport students to and from school or school-related events *shall meet or exceed all federal regulations and the Ohio school bus minimum construction standards (division (F) of section 4511.01 of the Revised Code)."* (Emphasis added.) Division (B) of Ohio Adm.Code 3301–83–19 provides that "public transit vehicles"—including vehicles owned and operated by regional transit authorities—*are also* authorized vehicles for transportation of pupils to and from school and school-related events, though makes no such requirement.

In addition, R.C. 3317.024(K) provides for payments to school districts for transportation operating costs. Ohio Adm.Code 3301–83–01, which provides the rule regarding the calculation of pupil transportation operation payments, provides in pertinent part:

"(E) Vehicles approved for use and operational payment

"(1) Board-owned and operated school buses—A vehicle operated by a qualified driver *meeting the definition of a school bus* successfully passing the annual state highway patrol safety inspection assigned a school bus identification number and painted national school bus chrome with proper black lettering. Vehicle met or exceeded Ohio school bus minimum standards at the time of construction.

"* * *

"(3) Public transit vehicles—*Vehicles owned and operated by regional transit authorities,* community transit authorities, or privately owned, under contract with a board of education and operated on routes designed for the purpose of transporting fare-paying passengers and eligible students simultaneously." (Emphasis added.)

Chapter 4501–1 of the Ohio Administrative Code provides rules and regulations promulgated by the Ohio Department of Public Safety regarding the transportation of pupils. Specifically, Ohio Adm.Code 4501–1–01 and 4501–1–02 provide in pertinent part as follows:

"4501–1–01 Definitions.

"Rule text

"* * *

"(G) Mass Transit System—Any person, partnership, association or corporation engaged in the transportation of the general public over established routes under the I.C.C. or a permit issued by the Public Utilities Commission of Ohio or franchise of a political subdivision.

"(H) Dual Operation—Any person, partnership, association or corporation engaged in the transportation of the general public over established routes under the I.C.C. or a permit issued by the Public Utilities Commission of Ohio or franchise of a political subdivision and also owns one or more school buses."

"4501–1–02 Application of rules and regulations.

"Rule text

"(A) Any person, partnership, association or corporation defined as a mass transit system is exempted from these rules and regulations with the exception of Rule 4501–1–03 [Application for license].

"(B) Any person, partnership, association or corporation as defined under Dual Operation shall comply to all rules and regulations for school buses which they own or operate.

"(C) Any person, partnership, association or corporation engaged in the transportation of the general public and the transportation of pupils to or from school or school functions for profit and does not operate under the I.C.C. or Public Utilities Commission permit or franchise of a political sub-division shall comply to all rules and regulations."

This Court does not find that TARTA falls under the definition of "Dual Operation." Nor does the Court find that Ohio Adm.Code 4501–1–02(C) is applicable to TARTA.

In view of the express language of R.C. 4511.78 and the legislative history, as well as the administrative rules enumerated above, it is apparent that, contrary to the arguments of the plaintiffs, TARTA is a public or mass transit system which *is* a separately recognized and authorized means of providing transportation for school children.

### D

Plaintiffs also argue that the TARTA buses which transport children to and from school are not excluded from the definition of "school buses" because, in addition to TARTA not being one of the excluded transportation systems under R.C. 4511.01(F), those buses are operated "exclusively" for transporting children to and from school. In support of their argument, plaintiffs submit the affidavit of Michael A. Kutzke, who states that one day he attempted to board a TARTA bus but was informed by the driver that since the bus was transporting school children he could not get on. (Affidavit of Michael A. Kutzke at paragraph 2.) In addition, plaintiffs claim that the way TARTA establishes and maintains routes to provide transportation service for students as well as the method by which TARTA is reimbursed for these services by the Board of Education demonstrates that the TARTA buses which transport children to and from school are devoted exclusively to that purpose.

The Board of Education counters that those buses which transport children to and from school are not "operated for the transportation of children to or from a school session or a school function" nor are such buses "devoted exclusively to the transportation of children to and from a school session or a school function." (Defendant Board of Education's Memorandum in Support of Defendant Board of Education's Motion for Summary Judgment at pages 5–6.) TARTA, on the other hand, asserts: (1) it a regional transit authority which was not created until 1970 and therefore not contemplated in R.C. 4511.01(F), which was enacted in 1961;

(2) the General Assembly specifically chose not to amend R.C. 4511.01(F) to include regional transit authorities; and (3) R.C. 4511.78 specifically governs regional transit authorities. Thus, TARTA contends it is not even necessary to reach the issue of whether or not TARTA's buses are "devoted exclusively to the transportation of school children." (Defendant Toledo Area Regional Transit Authority's Reply Brief at pages 1–2.)

Again, R.C. 4511.78 on its face applies to the transportation of school children to or from a school session or school function by a mass transit system, such as a regional transit authority. However, the statute does *not* include a provision similar to that of R.C. 4511.01(F) which would provide that, under R.C. 4511.78, "bus" does not mean any school bus as defined in R.C. 4511.01(F) "unless such bus is devoted exclusively to the transportation of school children." Nor does the express language of R.C. 4511.78 make any reference to that particular provision of R.C. 4511.01(F). As discussed above, where its language is clear and unambiguous, a court simply may not supply something omitted from a statute by the General Assembly. *Evatt, supra.*

Even assuming that the General Assembly meant for such a provision to apply, in view of the depositions, affidavits, exhibits, and arguments of counsel, the Court does not find that there is raised a genuine issue of material fact as to whether or not those TARTA buses which transport school children are devoted "exclusively" to that purpose. TARTA was not created for the sole purpose of providing transportation to students in the Toledo City School District, but to provide a *public* transportation service available to all residents of the communities which TARTA serves.[6] There is nothing before the Court which establishes that TARTA maintains a specific, separate and distinct fleet of either standard TARTA transit buses or specially identified buses which are used exclusively to transport children to and from school. Richard Ruddell, who is the general manager of TARTA, testifies in his deposition that any member of the public may board TARTA's buses, even when carrying school children (though it is apparent most members of the general public do not ride when they are carrying school children). (Deposition of Richard Ruddell at pages 22–26.) In addition, according to the deposition testimony of William Herr, the Director of Planning for TARTA, non-students have been observed aboard TARTA buses contemporaneously with students. (Deposition of William Herr at pages 22–26. See, also, Deposition of Sharon Dart–Roughten at pages 18–20.) Moreover, plaintiffs themselves "concede as fact that occasionally a non-school child will ride a TARTA bus on a 'school route.'" (Plaintiffs' Memorandum Contra Motions for Summary Judgment by TARTA and Board at page 6.) See, also, Deposition of

---

6. See Toledo City Ordinance 818–70 and the amendments thereto.

Brandie Collins at pages 37–38 (Ms. Collins's testimony regarding her observing adults getting on the TARTA buses).

In view of the above, as to this portion of the respective arguments of the parties, the Court finds that there is no genuine issue of material fact and defendants TARTA and the Board of Education are entitled to judgment as a matter of law.