MORIN, APPELLANT, *v.* CLEVELAND METROPOLITAN GENERAL HOSPITAL SCHOOL OF NURSING, APPELLEE.

(No. 50831—Decided
September 2, 1986.)

*Lewis Einbund,* for appellant.
*Richard C. Hoenigman,* for appel-
lee.

ABOOD, J. This is an appeal by the
plaintiff from the trial court's granting
of the defendant's motion for summary
judgment and dismissal of plaintiff's
complaint. For the reasons set forth
below, the trial court's judgment is
hereby affirmed.

I

The undisputed facts that were be-
fore the trial court for its consideration
in deciding the motion for summary
judgment are as follows:

In September 1982, the plaintiff-
appellant, Victoria Morin, enrolled in
the defendant-appellee's three-year
nursing school program. As of April 1,
1984, Morin was fifty-seven years of
age and was a third-year student in the
program, with June 1984 as an expect-
ed completion date. On April 2, 1984,
Morin began the clinical portion of a
course designated as "Med/Surg III"
under the supervision of course in-
structor Mary Pannitto, R.N. On April
3 and 4, 1984, Pannitto observed six
separate instances of what she be-
lieved to be unsafe nursing practices
committed by Morin.[1] Pannitto pro-
vided Morin with instruction and
evaluation as each instance occurred
and on April 4 advised Morin further
that she intended to bring them to the

---

[1] Acts of unsafe nursing practices that
were before the trial court by affidavit of
Pannitto are paraphrased as follows: (1)
Morin repeatedly classified the drug
Epinephrin as being a "muscle relaxer"
when, in fact, it is a stimulant. (2) Morin at-
tempted to administer the drug Heparin to
a patient using the wrong type of syringe.
In explaining her use of the incorrect sy-
ringe, Morin stated she recalled Pannitto's
showing the students a "standard" 3 cc.
syringe. Morin recalled that the syringe had
a blue cap; she attempted to use the 12 cc.
syringe because it also had a blue cap. The
color of the cap rather than the type and
form of medication controlled her actions.
(3) Morin insisted, totally incorrectly, that
Pyridium was being used as a medication
for treatment of the lung fluid of her pa-
tient. (4) Despite having no prior experi-
ence of the kind, Morin performed lung
drainage on her patient without supervi-
sion. (5) Morin, although assigned to only
one patient, stated that she was over-
whelmed with the twelve medications of the
patient. In fact, the patient had thirteen
medications. Despite her problems with the
medications, basic physiology and anatomy,
Morin did not apply sound nursing practices
such as the regular use of drug cards and
other reference sources. (6) On April 3, the
use of Heparin was reviewed with Morin.
On April 4, when quizzed in regard to
Heparin, and its application, Morin was
unable to give a satisfactory answer. This
drug was being used in the treatment of the
one patient assigned to Morin and yet she
did not comprehend its application to the
patient.

attention of the Admissions and Standards Committee. On April 5, Pannitto provided Morin with written notice of her failure to meet seven specified course objectives, of her intent to take the matter before the Admissions and Standards Committee, and of Morin's right to make a fifteen-minute presentation at the time the matter was presented to the committee. Both Pannitto and Morin made presentations to the committee and, on April 6, 1984, the committee recommended that Morin be dismissed. On April 9, 1984, this recommendation went before the entire faculty (Pannitto excluding herself from the decision-making process of both the Admissions and Standards Committee and the faculty as a whole). On April 9, 1984, after reviewing Morin's entire record as a student, the faculty unanimously voted for dismissal based on her unsafe nursing practices, her poor pattern of performance as evidenced by her prior probation status and her failure to meet the curriculum guidelines of "Med/Surg III."

Further undisputed facts that were before the trial court are that: in November 1983, Morin was placed on clinic warning in a course designated "Pediatric Nursing"; upon admission, Morin had been fully advised of the curriculum requirements of the school, of the fact that failure to meet one or more of the clinical objectives of a nursing course could result in her dismissal and of the established procedure followed by the school when those requirements are not met by a student; established procedure was followed by the school administration in their dismissal of Morin; and Morin was given the opportunity to reapply for admission but chose not to do so because due to curriculum changes she would have had to repeat several courses.

Morin believes that her dismissal from school while in the final course of her senior year after only three sessions of clinical observation was arbitrary and capricious and constituted a violation of due process. Morin filed her original complaint for mandatory relief and for monetary damages. At oral argument before this court, Morin's attorney advised that she has completed her nursing education at another school and therefore the matter of mandatory relief was moot. All that remains is Morin's amended complaint for monetary damages.

## II

Plaintiff-appellant's one and only assignment of error is:

"The trial court erred in granting defendant-appellee's motion for summary judgment because there exists a genuine issue of material fact which can only be properly tried to a trier of fact."

As they relate to the matter of the motion for summary judgment, the proceedings of the trial court were recorded by the following entries (although not necessarily in this order or in this expressed language):

March 15, 1985, motion for leave to file motion for summary judgment by defendant.

March 15, 1985, motion for summary judgment filed by defendant.

April 30, 1985, brief of plaintiff in opposition filed to defendant's motion for summary judgment.

May 2, 1985, defendant's motion for summary judgment denied.

May 8, 1985, motion for reconsideration filed by defendant.

August 7, 1985, motion for reconsideration of motion for summary judgment granted. Case dismissed.

It is from this apparent final order that this appeal is taken. No separate findings appear to have been made by the trial court as to either its original decision on the motion for summary judgment or the motion for reconsideration.

To begin with, for this court to ef-

fectively review the trial court's decision, the language of that court's final entry of August 7, 1985 must be interpreted to mean that a finding was made that there remains no genuine issue as to any material fact and that when considering the facts most strongly in favor of the plaintiff, reasonable minds can come to but one conclusion and that conclusion is that the defendant's dismissal of plaintiff was not arbitrary and capricious, that her right to due process was not violated, and that the defendant is entitled to judgment as a matter of law.

This court agrees with both of the parties that, while education is not a fundamental right, a university may not arbitrarily dismiss a student without due process of law. *Kister* v. *Ohio Bd. of Regents* (S.D. Ohio 1973), 365 F. Supp. 27, affirmed (1974), 414 U.S. 1117.

This court agrees further with both of the parties that the standard for judicial intervention in academic decision-making is where a dismissal is clearly shown to be arbitrary and capricious. Beyond this point, however, the parties part company.

Appellant claims that her affidavit (unsigned), stating that: Pannitto displayed hostility and ill-will toward her which made it impossible for her to prepare for her course; Pannitto prevented her from having a full opportunity to show her knowledge and ability and to complete the course; and that the actions of Pannitto in bringing the matter before the Admissions and Standards Committee was arbitrary and capricious, raises a material issue of fact as to whether actions of the school in dismissing her were arbitrary and capricious. What appellant seems to fail to recognize, however, is that just because she says it is so does not mean that it is so.

The very issue that the trial court was to decide was first whether any material facts remained at issue and, if not, could reasonable minds conclude other than that the dismissal of appellant was not arbitrary and capricious.

In a similar situation in *Bd. of Curators of Univ. of Mo.* v. *Horowitz* (1978), 435 U.S. 78, in which a medical student was dismissed for academic deficiencies, the Supreme Court found that since the school fully informed the student of its dissatisfaction with her clinical performance and the consequences of continued unsatisfactory performance, and since the decision to dismiss was carefully and deliberately made, there was no showing of arbitrariness or capriciousness and the student's rights to due process were not violated.

More recently in a similar situation, the Supreme Court again reviewed the dismissal of a medical student for academic reasons in *Regents of the Univ. of Mich.* v. *Ewing* (1985), 474 U.S. 214. In that case, the court followed its determination in the *Horowitz* case that university faculties must have the widest range of discretion in making judgments concerning the academic performance of their students and their entitlement to promotion or graduation.

In the *Ewing* case the court stated:
"When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." (Footnote omitted.) *Id.* at 225.

The court found that the university's decision to dismiss the student was made conscientiously with clear deliberation, based on an evaluation of his

entire academic career and was not a due process violation.

In this case, appellant was clearly advised of the requirements for completion of the nursing program and the consequences of failure to comply; she was advised of her deficiencies and given an opportunity to respond; the matter of her dismissal was considered first by the Admissions and Standards Committee and then by the entire faculty; she was dismissed based on her failure to meet curriculum guidelines and her poor pattern of performance as a whole; and she was given the opportunity to reapply for admission.

Accordingly, this court finds that the trial court was correct in finding that there remains no genuine issue as to any material fact and, when construing the evidence most strongly in favor of the plaintiff, reasonable minds can come to but one conclusion; that conclusion is that the dismissal of Morin was not arbitrary and capricious and that no due process rights were violated.

The appellant's one and only assignment of error is overruled.

*Judgment affirmed.*

STILLMAN, P.J., and LYNCH, J., concur.

ABOOD, J., of the Court of Common Pleas of Lucas County, sitting by assignment in the Eighth Appellate District.

STILLMAN, P.J., retired, of the Eighth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.

LYNCH, J., retired, of the Seventh Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.