[Cite as *Danckaert v. Cuyahoga Community College Found.*, 2017-Ohio-1159.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 104600**

---

# EMILY DANCKAERT

### PLAINTIFF-APPELLANT

vs.

# CUYAHOGA COMMUNITY COLLEGE FOUNDATION, ET AL.

### DEFENDANTS-APPELLEES

---

## JUDGMENT:
### REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-830312

**BEFORE:** Blackmon, J., E.A. Gallagher, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** March 30, 2017

**ATTORNEY FOR APPELLANT**

Brian J. Darling
Darling Duffy Co., L.P.A.
23823 Lorain Road, Suite 270
North Olmsted, Ohio 44070


**ATTORNEYS FOR APPELLEE**

Michael DeWine
Ohio Attorney General

Jeffrey Knight
Marissa J. Palumbo
Assistant Attorneys General
30 East Broad Street, 16th Floor
Columbus, Ohio 43215

Michael T. Fisher
Ohio Attorney General's Office
615 W. Superior Avenue, 11th Floor
Cleveland, Ohio 44113

PATRICIA A. BLACKMON, J.:

**{¶1}** Plaintiff, Emily Danckaert ("Danckaert"), appeals from the order of the trial court awarding summary judgment to defendants Cuyahoga Community College Foundation ("Tri-C") and Dental Hygiene Program Manager  Mary Lou Gerosky ("Gerosky") (collectively referred to as "Defendants"), in Danckaert's action for breach of contract and other causes of action.   Danckaert assigns the following three errors for our review:

> I.   The trial court erred in granting Tri-C and Gerosky's motion for dismissal/summary judgment since Tri-C breached its promise to pass Danckaert under the modified contractual terms.

> II.   The trial court erred in granting Tri-C and Gerosky's motion for dismissal/summary judgment since promissory estoppel prevents Tri-C and Gerosky from dismissing Danckaert from the Dental Hygiene Program.

> III.   The trial court erred in granting Tri-C and Gerosky's motion for dismissal/summary judgment since Tri-C's decision to dismiss Danckaert from the Dental Hygiene Program was arbitrary and capricious and violated her due process rights.

**{¶2}** Having reviewed the record and pertinent law, we reverse and remand for further proceedings consistent with this opinion.   The apposite facts follow.

{¶3} Danckaert worked as a dental assistant in Ohio since 2009. In 2012, she entered Tri-C's Dental Hygiene Program in order to be authorized to perform additional professional duties.

{¶4} During the spring semester of her first year in the program, Danckaert received deficient marks in one of her clinical courses, Preventative Oral Health Services II ("POHS II") or "DENT 1400." Danckaert explained that her instructor did not timely sign off on a portion of her work, so she requested permission to receive an "Incomplete" in the class. At this time, Danckaert was advised in writing that she would be placed on academic probation. She was further advised that no student is permitted to earn two or more "Incompletes" in a class series, under the following provision in the program handbook:

> Two consecutive incomplete grades in the clinical component of the POHS [Preventative Oral Health Services] I, II, III, or IV may lead to academic dismissal. Situational circumstances will be addressed on a case by case basis and a decision will be made by a consensus of the dental hygiene faculty.

{¶5} Danckaert finished the work after the term ended. She received a B in the class, and the Incomplete was removed. The following year, Danckaert began Preventative Oral Health Services III ("POHS III"). The syllabus for this course requires the students to have an end of the term average of at least 86% in the Professional Development component of this course. Danckaert struggled in POHS III. She sought counseling from the course instructor Jane Durocher-Jones ("Durocher-Jones") and preceptor Irina Novopoltseva ("Novopoltseva"). Clinical

Coordinator Cynthia Quint ("Quint")  met with Danckaert to discuss how Danckaert could bring up the grade and pass the course.   Quint also conferred with instructor Jones, and they agreed that    Danckaert was entitled to 60% rather than the 0 she had been given in one of the Professional Development clinical sessions.   With the benefit of this change, Quint and Jones calculated that if Danckaert received 100% in seven of the remaining 11 sessions, she could pass the Professional Development component of POS III and pass the course.   They   emailed program manager Gerosky, advising her of their calculations and asking Gerosky to inform Danckaert of their computations.

{¶6}   It is undisputed that Danckaert subsequently received scores of 100% on nine of the remaining Professional Development sessions, but her final grade was 83.6%.   She also received passing grades in other coursework for that semester, but was dismissed from the program.

{¶7}   Danckaert met with Quint and Jones about options for extra credit and improving her grade.   Jones informed Danckaert that "everything is up for discussion" and that "no single instructor" could determine if a student passed or failed. At that point, according to Quint, faculty members discussed permitting Danckaert to continue and make up some Professional Development sessions in order to have sufficient points to pass.   Ultimately, however, Gerosky determined that Danckaert would not be given the option of improving her grade after the formal end of the course because she had previously received a grade of Incomplete.

{¶8} The faculty for the program reviewed Danckaert's academic history and determined, by consensus, that Danckaert should be dismissed from the program due to the deficient grade in POHS III and the prior Incomplete in POHS II, DENT 1400. Danckaert administratively appealed the failing grade and challenged her scores for two Professional Development sessions. In the first level of administrative review, Associate Dean Barbara Mikuszewski concurred with the determination that Danckaert failed the course. In the second level of administrative review, a panel of faculty from other programs also affirmed the determination. In the third and final step of the administrative review process, Campus President Dr. Michael Schoop ("Dr. Schoop") likewise affirmed the decision.

{¶9} Gerosky and other faculty members encouraged Danckaert to seek readmission to the program in order to repeat the failed course. It is undisputed that Danckaert sent Tri-C a letter asking for readmission but she did not receive permission from Gerosky authorizing her to reapply. According to Gerosky, Danckaert's request for readmission lacked a detailed plan for future academic success which is required under the readmission policy; if this had been included, Gerosky would have voted to readmit Danckaert into the program.

{¶10} Danckaert subsequently filed suit against Defendants, alleging violations of her right to procedural due process, breach of contract, breach of duty of good faith and fair dealing, negligence, and unjust enrichment. Defendants filed a motion to

dismiss/motion for summary judgment. On May 16, 2016, the trial court granted Defendants' motion for summary judgment.

## Review of Summary Judgment

{¶11} This court reviews a trial court's grant of summary judgment under the de novo standard. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241. Pursuant to Civ.R. 56(C), summary judgment is appropriate when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus; *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 1998-Ohio-389, 696 N.E.2d 201. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293,1996-Ohio-107, 662 N.E.2d 264.

## Breach of Contract, Duty of Good Fiath and Fair Dealing

{¶12} Danckaert set forth claims for breach of contract and breach of duty of good faith and fair dealing. She argues that Defendants modified the provisions of the parties' contractual terms when Quint and Jones recalculated her grade and determined that Danckaert would receive a passing grade in POHS III if she received 100% in seven of the remaining eleven Professional Development sessions. Danckaert further argues

that Defendants breached this modified contract by giving her a failing grade even after she surpassed the modified requirements and received 100% in nine of the course sessions. In opposition, Tri-C argues that Quint's and Jones's calculations did not modify the parties' agreement.

{¶13} In order to prevail on a breach of contract claim, a plaintiff must prove the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff. *Prince v. Kent State Univ.*, 10th Dist. Franklin No. 11AP-493, 2012-Ohio-1016, ¶ 24, citing *Wells Fargo Bank, N.A. v. Sessley*, 188 Ohio App.3d 213, 2010-Ohio-2902, 935 N.E.2d 70,¶ 32 (10th Dist.). The covenant of good faith and fair dealing is part of a contract claim. *Third Fed. S & L Assn. of Cleveland v. Formanik*, 8th Dist. Cuyahoga No. 103649, 2016-Ohio-7478, ¶ 46. "A breach of the covenant of good faith and fair dealing 'does not stand alone as a separate claim from breach of contract.'" *Id.*, quoting *Stancik v. Deutsche Natl. Bank*, 8th Dist. Cuyahoga No. 102019, 2015-Ohio-2517, ¶ 46.

{¶14} In *Bleicher v. Univ. of Cincinnati College of Med.*, 78 Ohio App.3d 302, 604 N.E.2d 783 (10th Dist.1992), the court held that it "is axiomatic that '* * * when a student enrolls in a college or university, pays his or her tuition and fees, and attends such school, the resulting relationship may reasonably be construed as being contractual in nature.'" *Id.* at 308, quoting *Behrend v. State*, 55 Ohio App.2d 135, 139, 379 N.E.2d 617 (10th Dist.1977). "This contract is typically found in a handbook, catalogue, or other guideline." *Tate v. Owens State Community College,* 10th Dist.

Franklin No. 10AP-1201, 2011-Ohio-3452, ¶ 21.   However, where the contract permits, the parties may alter its terms by mutual agreement, and any additional terms will supersede the original terms to the extent the two are contradictory.   *Lewis v. Cleveland State Univ.*, 10th Dist. Franklin No. 10AP-606, 2011-Ohio-1192, ¶ 14; *Mahalati v. Ohio State Univ.*, Ct. of Cl. No. 2006-02978, 2007-Ohio-3856, ¶ 11; *Pham v. Case W. Res. Univ.*, 8th Dist. Cuyahoga No. 71083, 1997 Ohio App. LEXIS 1307, 2 ("The terms of [the parties' contract] can be altered by mutual agreement, and any additional terms will supersede the original terms to the extent the two are in conflict.").   *See also Bleicher* at 308.

{¶15}   In general, courts have recognized that a university may modify course requirements in order to permit a struggling student to remediate a potential failing grade.   *See   Marx v. Ohio State Univ. College of Dentistry*, 10th Dist. Franklin No. 95APE07-872, 1996 Ohio App. LEXIS 798, 10 (Feb. 27, 1996) (discussing a remediation program that modified course requirements in order to assist a struggling student); *Pham* (considering whether a letter constituted a modification of the contractual relationship between the university and a student who had deficient grades, was permitted to remediate a failed course, but was later dismissed in the fourth year of his academic program).

{¶16}   In this matter, the parties' contract, as set forth in the program handbook, states that "no student is permitted to earn two or more incomplete grades in a series, or permitted to earn consecutive incomplete grades."   The syllabus for POHS III requies

students to obtain an average of at least 86% in the Professional Development portion of the class. It further provides that the "Syllabus is the final word on course interpretation. Any modification to a syllabus will be communicated to the students in written form."

{¶17} The record clearly shows that Quint meets with students who are at risk of failing courses and assists them with identifying what is needed to bring up their grades. In this matter, Quint and Jones later determined that Danckaert had improperly received a 0 in one of the Professional Development sessions. After adjusting this grade, Quint and Jones calculated that if Danckaert received 100% in seven of the remaining 11 sessions, she could pass the Professional Development component of POS III and pass the course. Quint also emailed program manager Gerosky of the grade correction and the calculations she computed regarding Danckaert successfully completing the course. Quint also instructed Gerosky to inform Danckaert of this information. Despite surpassing the necessary scores based upon Quint's and Jones's calculations and receiving passing marks in the other portions of the coursework for that semester, Danckaert was advised that she was failing the course. Danckaert met with Quint and Jones about options for extra credit and improving her grade. Jones informed Danckaert that "everything is up for discussion" and that "no single instructor" could determine if a student passed or failed. Gerosky insisted that the failing grade could not be remediated, however, based upon the prior Incomplete and notified Danckaert that she was dismissed from the program. She acknowledged, however, that the faculty engages in lengthy discussions about each student who faces dismissal from the program. In addition, the

handbook does not require dismissal as it states that two Incompletes "may lead to academic dismissal. Situational circumstances will be addressed[.]"

**{¶18}** From the foregoing, we conclude that there is a genuine issue of material fact as to whether Tri-C modified the parties' contractual relationship when it corrected one of Danckaert's grades and determined that she could pass the Professional Development component if she attained seven perfect scores. We note that nothing in case law, the handbook, or the syllabus bars such remediation. In addition, all of the instructors admitted that they meet with struggling students in order to bring up their grades to minimum competency. Moreover, we conclude that there are genuine issues of material fact as to whether Tri-C may have breached the contract modifications by dismissing Danckaert from the program after she surpassed the competency calculations derived by Quint and Jones, and passed the other courses for that semester. Although the Handbook provision regarding two consecutive Incompletes was offered as the justification for this decision, the handbook merely states that the student "may be dismissed."

**{¶19}** Tri-C insists that this matter is governed by *Duncan v. Cuyahoga Community College,* 2015-Ohio-687, 29 N.E.3d 289 (8th Dist.), and that it's contract was not modified. In *Duncan*, the plaintiff (former student) testified that the instructor told the students that if they showed up every day and listened to the instructions, they would pass their Peace Officer certification. This court noted that Duncan could identify no writing or other evidence to demonstrate a contract promising her certification. Rather,

the course documents promised only that she would receive training as to the Peace Officer requirements. *Id*.

{¶20}  *Duncan* is clearly distinguishable from this matter as  Danckaert had presented far more than an instructor's general remarks about how a student may pass a course.   Danckaert presented clear evidence that she met with faculty about passing the Professional Development portion of the class.   Thereafter, Quint, the clinic coordinator, and Jones, the instructor for the course, calculated that it was possible for Danckaert to pass when she had seven perfect scores in the remaining eleven sessions and notified Gerosky of this fact. They also informed Gerosky to advise Danckaert of their calculations.

{¶21} In accordance with the foregoing, we conclude that there are genuine issues of material fact regarding the breach of contract claim.

## Promissory Estoppel

{¶22}   Danckaert next asserts that the trial court erred in awarding defendants summary judgment on the promissory estoppel claim because she acted to her detriment in reliance on Quint's representations regarding the efforts needed to pass POHS III.

{¶23}   In *Prince*, 2012-Ohio-1016, the court held that promissory estoppel is not applicable to a case involving an academic dispute at a public university and stated:

> Prince next challenges the trial court's rejection of her promissory estoppel
> claim. "'It is well-settled that, as a general rule, the principle of estoppel
> does not apply against a state or its agencies in the exercise of a

governmental function.'" *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, ¶ 25, 852 N.E.2d 716, quoting *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143, 145-146, 555 N.E.2d 630 (1990). The provision of higher education is a governmental function. *Hutsell v. Sayre*, 5 F.3d 996, 1002 (6th Cir. 1993); *Hall v. Med. College of Ohio at Toledo*, 742 F.2d 299, 305 (6th Cir.1984). Therefore, applying the general rule, Prince cannot pursue a promissory estoppel claim against KSU.

*Id.* at ¶ 41.

{¶24} By application of *Prince*, Tri-C's provision of higher education is a governmental function so promissory estoppel does not apply herein. Therefore, this assigned error lacks merit.

### Procedural Due Process

{¶25} Danckaert next argues that Defendants violated her right to procedural due process by dismissing her from the program and denying her request for readmission.

{¶26} It is well-settled that "'while education is not a fundamental right, a university may not arbitrarily dismiss a student without due process of law.'" *Fabrotta v. Meridia Huron Hosp. Sch. of Nursing*, 102 Ohio App.3d 653, 658 N.E.2d 816 (8th Dist.1996), quoting *Morin v. Cleveland Metro. Gen. Hosp. School of Nursing*, 34 Ohio App.3d 19, 22, 516 N.E.2d 1257 (8th Dist.1986). The purpose of judicial relief is to assure the student fair treatment, and not for the court to reweigh or reevaluate the grades or the basis of the dismissal. *Id*. The *Fabrotta* court explained:

Courts should not intervene in academic decision-making where a student is dismissed, unless the dismissal is clearly shown to be arbitrary and capricious. *Morin*, 34 Ohio App.3d at 22, 516 N.E.2d at 1259. "As a general rule, the burden is upon the student to show the existence of arbitrariness, capriciousness, or bad faith in the grading procedure or system." *Johnson* [*v. Cuyahoga Cty. Community College*], 29 Ohio Misc.2d [33]at 34, [489 N.E.2d 1088].

*Id*.

{¶27} In this matter, the record demonstrates that Danckaert exceeded the calculations set forth by Quint and Jones and passed the remaining portions of the course, but does not demonstrate why she nonetheless failed the Professional Development sessions and failed POHS III. Although Gerosky admitted that her interactions with Danckaert were reflected in the final failing grade, she did not explain what those interactions were or what exactly occurred that caused her to insist that Danckaert had failed. Further, although Tri-C maintains that Danckaert had to be dismissed by operation of the handbook provisions regarding successive Incompletes, the handbook does not require dismissal as it states that two Incompletes "may lead to academic dismissal. Situational circumstances will be addressed[.]" Tri-C did not present any evidence to demonstrate that situational circumstances were considered and why dismissal occurred after such consideration. In addition, Danckaert presented evidence that Tri-C never responded to her request for readmission. From all of the foregoing, the trial court erroneously determined that Tri-C is entitled to summary judgment on the due process claim because Danckaert presented evidence to present a genuine issue of

material fact as to whether the dismissal and the denial of her request to reapply were arbitrary, capricious, or in bad faith.

**{¶28}** Therefore, the third assigned error is well-taken.

**{¶29}** Based upon all of the foregoing, the trial court erred in awarding defendants summary judgment.

**{¶30}** Judgment is reversed, and matter is remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover of appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, JUDGE

EILEEN A. GALLAGHER, P.J., and
MELODY STEWART, J., CONCUR