[Cite as *Swiech v. Sylvania City School Dist. Bd. of Edn.*, 2025-Ohio-405.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| Jennifer A. Swiech, et al. | Court of Appeals No.  L-24-1090 |
| Appellants | Trial Court No.  CI0202203761 |
| v. | |
| Board of Education for the Sylvania City School Dist., et al. | **DECISION AND JUDGMENT** |
| | Decided: February 7, 2025 |
| Appellees | |

* * * * *

Andrew R. Mayle, Benjamin G. Padanilam,
and Nicole K. Papageorgiou, for appellants.

Jennifer J. Dawon, Amy M. Natyshak, Shawn A.
Nelson, and Franceska N. Surinck for appellees.

Hollie F. Reedy, for amici curiae, The Ohio School
Boards Association, Ohio Association of School Business
Officials, and Buckeye Association of School Administrators.

* * * * *

**ZMUDA, J.**

## I. Introduction

{¶ 1} Appellant, Jennifer Swiech, appeals the judgment of the Lucas County Court of Common Pleas granting summary judgment in favor of appellees, Board of Education of Sylvania City School District and its transportation director Jim Wolpert (collectively the "School District"), on her claim that the School District's bussing scheme violated her

constitutional rights to equal protection and the free exercise of religion.[1]  For the

following reasons, the trial court's judgment is affirmed.

## A. Factual Background and Procedural History

{¶ 2} The underlying facts in this case are undisputed.  Swiech is a parent of

elementary-aged children living in the School District, who elects to send her children to

Saint Joseph Parish School ("St. Joe's), a private Catholic school, for religious reasons.

She desires to fully utilize the School District's bussing system to send her children to

and from school, but does not do so because of safety concerns, dissatisfaction with the

level of service provided, and timing conflicts with her son's medication needs.

{¶ 3} The School District is required to provide bussing to students residing within

the district under R.C. 3327.01, which provides, in relevant part,

> In all city, local, and exempted village school districts where resident
> school pupils in grades kindergarten through eight live more than two miles
> from the school for which the director of education and workforce
> prescribes minimum standards pursuant to division (D) of section 3301.07
> of the Revised Code and to which they are assigned by the board of
> education of the district of residence or to and from the nonpublic or
> community school which they attend, the board of education shall provide
> transportation for such pupils to and from that school except as provided in
> section 3327.02 of the Revised Code.

R.C. 3327.02 provides a process with administrative protections for the parents that

allows the School District to determine that transportation of certain students is

impractical and to offer payment in lieu of transportation.

---

[1] The notice of appeal was also filed on behalf of co-plaintiffs James and Nicole
Vanderweele.  Shortly before the scheduled oral argument, the Vanderweeles moved to
voluntarily dismiss their appeal, which this court granted.

{¶ 1} In accordance with R.C. 3327.01, the School District provides bussing to its 12 public schools as well as to 17 nonpublic or community schools, which include both religious and non-religious schools. On a normal day, the School District will transport over 4,200 students within a 90-minute timespan.

{¶ 2} Prior to the 2022-2023 school year, the School District provided direct bussing for all students of the 12 public schools and for three private, religious schools located in Sylvania: St. Joe's, St. Benedict, and Christ the King. Students attending St. Joe's were transported directly to school on five to seven busses, and directly home from school on five or six busses. At times, there would only be seven students on a 72-student capacity bus. Students attending the remaining 14 nonpublic or community schools were transported via a "hub and spoke" system whereby the students would first be transferred to a centralized location before being bussed to school or home.

{¶ 3} During the 2021-2022 school year, the School District experienced the effects of a nationwide shortage of bus drivers. Between March 2022 and the end of that school year, the School District had to cancel at least 55 runs, sometimes with little to no notice. Consequently, the Ohio Department of Education found the School District to be in noncompliance with the bussing requirements and withheld $100,000 in transportation funding.

{¶ 4} To address the bussing issues and driver shortage, the School District developed a new transportation plan for the 2022-2023 school year. As part of that plan, it eliminated direct bussing for St. Joe's, St. Benedict, and Christ the King and included them with the rest of the nonpublic or community schools that operate on the hub and

3.

spoke system. Since implementing the new plan, the School District has been forced to cancel a run only one time and has not been found in noncompliance by the Ohio Department of Education.

{¶ 5} The resulting plan has increased the amount of time that Swiech's children would be on the bus. For the 2022-2023 school year, the Swiech children were scheduled to be picked up from home at 6:35 a.m. to arrive at school in time for the 8:00 a.m. start. After dismissal at 2:40 p.m., the children were scheduled to be delivered home at 3:36 p.m. For the 2023-2024 school year, the children were to be picked up at 6:52 a.m. and delivered home at 3:26 p.m. The route to school involves a transfer and layover at Northview High School, and the route home involves a transfer and layover at Arbor Hills Junior High School. Notably, the Swiechs live 1.5 miles from St. Joe's. She elected to have her children ride the bus only in the afternoon.

{¶ 6} Swiech initiated the present matter by filing a complaint seeking a declaratory judgment and permanent injunction.[2] In her complaint, she alleged that the School District's bussing plan was unlawful in three ways: (1) it violated the statutory obligation under R.C. 3327.01 to transport students "to and from" school, which implies no transfers or layovers; (2) it violated the guarantee of equal protection set forth in Article 1, Section 2 of the Ohio Constitution; and (3) it violated the Free Exercise Clause under Article I, Section 7 of the Ohio Constitution.

---

[2] The complaint was styled as a class action complaint, but no class has been certified.

4.

**{¶ 7}** Notably, the trial court awarded summary judgment in favor of the School District on the claim that its bussing plan violated R.C. 3327.01. Swiech assigns no error relative to that portion of the trial court's judgment and does not otherwise argue it on appeal. Thus, this decision will focus only on her equal protection and free exercise claims.

### B. The Parties' Arguments in Support of Summary Judgment

**{¶ 8}** Following pretrial discovery, the parties filed competing motions for summary judgment.

### 1. Equal Protection

**{¶ 9}** In her motion, Swiech addressed her equal protection claim by arguing that R.C. 3327.01 makes no distinction between students who attend nonpublic or community schools and those who attend public schools, so any differentiation based on geography or choice of school is irrelevant for purposes of the similarly situated analysis. As such, she contended that under R.C. 3327.01 her children are similarly situated to their public-school counterparts, and therefore any disparate treatment violates her equal protection rights.

**{¶ 10}** Moreover, even if her children are not similarly situated, Swiech argued that the School District's classification is not rationally related to a legitimate government interest. She posited that issues of drive time, distance, and impracticability cannot be legitimate considerations because those issues are already accounted for in the statutory scheme requiring transportation unless it is impracticable, and it is undisputed that the School District has not made any findings of impracticability. She also asserted that

5.

where there is a legitimate interest, such as a shortage of bus drivers, the proposed solution is not rationally related to that interest because the School District could cut bussing for high school students—which it is not statutorily required to provide—before it forced nonpublic or community school elementary students to endure the hub and spoke scheme.

{¶ 11} Finally, Swiech suggested that the issue could be analyzed under strict scrutiny instead of rational basis review because it involves her fundamental right to send her children to a religious school. Under that level of review, she contended that there is no compelling governmental interest and that the plan is not narrowly tailored to that interest because other options exist, such as eliminating bussing for high school students.

{¶ 12} The School District, in contrast, argued that Swiech's children are not similarly situated to public school students in all relevant respects. Specifically, it noted that students attending nonpublic or community schools are geographically dispersed throughout the district, attend schools with different start and end times, and attend schools with instructional days of different length, all of which affect route efficiency. For example, students attending St. Joe's reside in every attendance zone in the district, and the school begins its day at 8:00 a.m. and ends at 2:40 p.m. In contrast, students attending one of the School District's elementary schools all live in the same attendance zone, and most school days begin after 9:00 a.m. and end at 3:35 p.m. Because of these differences, the School District treats public school students and nonpublic or community school students differently.

6.

{¶ 13} In analyzing whether the disparate treatment is permitted under the equal protection clause, the School District first argued that rational basis review, not strict scrutiny, was the appropriate framework. It noted that because nonpublic students are not members of a "suspect class" and there is no fundamental right to an education or transportation to school, the higher level of scrutiny is not warranted.

{¶ 14} Under rational basis review, the School District asserted that based on the differences between public school students and nonpublic or community school students it created its bussing plan to advance its legitimate interest in establishing an efficient transportation plan which provides services to the most students possible. It argued that the bussing plan was rationally related to that interest, and indeed was effective in achieving that interest, as evidenced by the near elimination of the number of cancelled runs from 55 in three months to one in the past two years. Thus, the School District contended that its bussing plan did not violate Swiech's equal protection rights.

## 2. Free Exercise of Religion

{¶ 15} Turning to her free exercise claim, Swiech argued that the Ohio Constitution affords greater protections than the United States Constitution in that it applies to direct and indirect encroachments upon religious freedom. According to her, "[u]nequal service is inherently an indirect interference with attendance at a religious school and thus amounts to an encroachment upon religious freedom."

{¶ 16} In response, the School District argued that there was no evidence that its bussing plan was based on religion. In fact, the evidence demonstrated that all nonpublic or community school students, whether they attended religious or non-religious schools,

7.

were bussed under the same hub and spoke system. In addition, the School District argued that Swiech could not establish a prima facie free exercise claim because she could not show an impediment to the exercise of her religion, noting that her children still attend religious school and are afforded transportation to and from that school, thereby allowing them to fully exercise their faith by participating in religious classes, mass, daily prayers, and any sacraments. Furthermore, even if Swiech could establish a prima facie claim, the School District argued that its bussing plan is necessary and narrowly tailored to achieve its compelling governmental interest in affording transportation services to the greatest number of students. Therefore, the School District concluded that it did not violate Swiech's right to the free exercise of her religion.

### 3. Injunctive Relief

{¶ 17} Finally, the School District argued that Swiech was not entitled to injunctive relief because she (1) failed to establish success on the merits, (2) failed to establish irreparable harm because her children still attend school every day, (3) failed to establish no unjustifiable harm to third parties because hundreds of high school students would be deprived of bussing, and (4) failed to establish that the public interest would be served by the injunction, to the contrary, the public interest would be harmed because substantially fewer students would receive bussing services.

### D. Trial Court's Judgment

{¶ 18} Following complete briefing by the parties, the trial court entered its judgment on March 19, 2024, denying Swiech's motion for summary judgment, granting the School District's motion for summary judgment, and dismissing Swiech's complaint

8.

with prejudice. The trial court determined that Swiech's equal protection claim must fail because the classification between public school students and community or nonpublic school students did not involve a suspect class or fundamental right, and the School District's bussing plan was rationally related to the legitimate governmental purpose of conserving its limited financial resources in the implementation of its transportation plan. The trial court then determined that Swiech's free exercise claim also must fail because she did not demonstrate a prima facie case that the bussing plan had a coercive affect against her in the practice of her religion. It reasoned that there was no evidence that the bussing plan compelled Swiech to do anything forbidden by her religion, refrain from doing something required by her religion, or affirm or disavow a belief forbidden or required by her religion. Lastly, having determined that Swiech could not succeed on the merits, the trial court held that her claim for injunctive relief must fail.

### E. Assignment of Error

{¶ 19} Swiech timely appealed the judgment of the Lucas County Court of Common Pleas, asserting one assignment of error for review:

> 1. The trial court erroneously upheld a school transportation plan that offends appellants' children's constitutional rights to the equal protection of law and free religious exercise.

The School District has filed a brief in response, as have amici curiae the Ohio School Boards Association, Ohio Association of School Business Officials, and the Buckeye Association of School Administrators, and Swiech has filed her reply.

9.

**II. Law and Analysis**

**{¶ 20}** We review the grant or denial of a motion for summary judgment de novo, applying the same standard as the trial court. *Lorain Natl. Bank. v. Saratoga Apts.*, 61 Ohio App.3d 127, 129 (9th Dist. 1989); *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Under Civ.R. 56(C), summary judgment is appropriate where (1) no genuine issue as to any material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

**A. Equal Protection**

**{¶ 21}** Swiech first argues that the trial court erred in awarding summary judgment to the School District on her equal protection claim under Ohio's constitution.

**{¶ 22}** Article I, Section 2 of the Ohio Constitution provides,

> All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the general assembly.

**{¶ 23}** Traditionally, the Equal Protection Clause of the Ohio Constitution has been treated as providing the same protection as the Equal Protection Clause of the United States Constitution. *See Pickaway Cty. Skilled Gaming, L.L.C. v. Cordray*, 2010-Ohio-4908, ¶ 17 ("The federal and Ohio equal-protection provisions are 'functionally equivalent,' . . . and 'are to be construed and analyzed identically.'" (Internal citations omitted for readability.)); *State v. Williams*, 2010-Ohio-2453, ¶ 38; *Eppley v. Tri-Valley*

10.

*Local School Dist. Bd. of Edn.*, 2009-Ohio-1970, ¶ 11; *State v. Thompson*, 2002-Ohio-2124, ¶ 11; *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.*, 87 Ohio St.3d 55, 60 (1999).  In *State v. Mole*, 2016-Ohio-5124, three justices, joined by a fourth, concurring justice, introduced some doubt regarding the traditional view by recognizing the possibility that the Equal Protection Clause of the Ohio Constitution may be interpreted to provide greater protections than its federal counterpart, but they had no occasion to do so in that case because they held that the relevant statutory provision was violative of equal protection under both the federal and state constitutions.  *Id.* at ¶ 14-23.  Subsequent to *Mole*, however, the Ohio Supreme Court has on several occasions repeated that the two guarantees are "functionally equivalent."  *See State ex rel. Maras v. LaRose*, 2022-Ohio-3852, ¶ 17; *State v. Moore*, 2018-Ohio-3237, ¶ 22; *State v. Aalim*, 2017-Ohio-2956, ¶ 29.  Recently, this court has similarly recognized the view that the two are "functionally equivalent" and "are to be construed and analyzed identically."  *See Taxiputinbay, LLC v. Put-In-Bay*, 2023-Ohio-1237, ¶ 33 (6th Dist.); *Kinzel v. Ebner*, 2023-Ohio-164, ¶ 79 (6th Dist.).

{¶ 24} In this case, Swiech does not argue that the Ohio Constitution affords greater protection than the United States Constitution.  Therefore, in accordance with the above, we will apply the traditional equal protection analysis.

{¶ 25} The purpose of the Equal Protection Clause "is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."  *Kinzel* at ¶ 79, quoting *Village of Willowbrook v. Olech*, 528 U.S.

11.

562, 564 (2000). "Simply stated, the Equal Protection Clauses require that individuals be treated in a manner similar to others in like circumstances." *Taxiputinbay* at ¶ 33, quoting *Burnett v. Motorists Mut. Ins. Co.*, 2008-Ohio-2751, ¶ 30, quoting *McCrone v. Bank One Corp.*, 2005-Ohio-6505, ¶ 6.

{¶ 26} The touchstone is whether the comparators are similar in all relevant aspects. "Although citizens are entitled to equal protection under the law, governments are 'free to draw distinctions in how they treat certain citizens.'" *Ferguson v. State*, 2017-Ohio-7844, ¶ 30, quoting *Park Corp. v. Brook Park*, 2004-Ohio-2237, ¶ 19. "The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Id.*, quoting *Park Corp.* at ¶ 19, quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

### 1. Rational Basis Review Applies

{¶ 27} The first step in analyzing an equal protection claim is determining the appropriate standard of review. *Id.* at ¶ 31; *see Sherman v. Ohio Pub. Emps. Retirement Sys.*, 2020-Ohio-4960, ¶ 14; *Taxiputinbay* at ¶ 34. "When a claim involves a fundamental right or a suspect class, the government's action is subject to a higher level of scrutiny." *Sherman* at ¶ 14, citing *Adamsky v. Buckeye Local School Dist.*, 73 Ohio St.3d 360, 362 (1995). "But when no such right or class is involved, the government's action is subject to rational-basis review; it will be upheld 'if it is rationally related to a legitimate government interest.'" *Id.*, quoting *State v. Williams*, 2010-Ohio-2453, ¶ 39.

{¶ 28} At issue in this case is the classification between public school students and nonpublic or community school students for purposes of transportation by bus. To be

12.

entitled to heightened scrutiny, Swiech must demonstrate that this classification involves either a fundamental right or a suspect class. Notably, she makes no argument on this issue, simply stating without any explanation or legal support that "strict-scrutiny applies here."

{¶ 29} On the issue of whether transportation to and from school by bus is a fundamental right, we note that Ohio courts have recognized that education itself is not. *Novak v. Revere Local School Dist.*, 65 Ohio App.3d 363, 367 (9th Dist. 1989); *see also Plyler v. Doe*, 457 U.S. 202, 223 (1982) ("Nor is education a fundamental right; a State need not justify by compelling necessity every variation in the manner in which education is provided to its population."); *Rowitz v. McClain*, 2019-Ohio-5438, ¶ 21 (10th Dist.) ("Courts have rejected classifying things such as education, safe housing, and public welfare assistance as fundamental rights."); *Danckaert v. Cuyahoga Community College Found.*, 2017-Ohio-1159, ¶ 26 (8th Dist.) ("[W]hile education is not a fundamental right, a university may not arbitrarily dismiss a student without due process of law."); *Menke v. Ohio High School Athletic Assn.*, 2 Ohio App.3d 244, 245 (1st Dist. 1981) ("Education is not one of the rights that has been recognized by the Supreme Court as being 'fundamental.'"). Thus, because education is not a fundamental right, "there can be no fundamental right to transportation to school or reimbursement in lieu of transportation." *Novak* at 367.

{¶ 30} Nor are nonpublic or community school students members of a suspect class. "[T]he class of students who attend non-public schools . . . is not 'saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or

13.

relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.'"  *Id.*, quoting *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 28 (1973).

{¶ 31} Therefore, because this case does not involve a fundamental right or a suspect class, rational basis review applies.

### 2. The School District's Bussing Plan is Rationally Related to a Legitimate Government Interest

{¶ 32} Rational basis review consists of a two-step analysis.  "We must first identify a valid state interest.  Second, we must determine whether the method or means by which the state has chosen to advance that interest is rational."  *Sherman* at ¶ 15, quoting *McCrone v. Bank One Corp.*, 2005-Ohio-6505, ¶ 9.  A government's action will not be held to violate the Equal Protection Clause, and a plan of classification will not be invalidated unless it is clearly arbitrary and unreasonable.  *Id.*, quoting *McCrone* at ¶ 9. "Thus, provided that the [government action] is rationally related to a government interest, it will be upheld."  *Id.*  However, rational basis review "does not mean toothless scrutiny."  *Mole*, 2016-Ohio-5124, at ¶ 28.  "Even in the ordinary equal protection case calling for the most deferential of standards, we insist on knowing the relation between the classification adopted and the object to be attained."  *Id.*, quoting *Romer v. Evans*, 517 U.S. 620, 632 (1996).

{¶ 33} Under the first step, we hold that the School District in this case has a legitimate governmental interest in the conservation and efficient use of its resources to meet its requirement to provide transportation under R.C. 3327.01.  *Hensley v. Toledo*

14.

*Area Regional Transit Auth.*, 121 Ohio App.3d 603, 612 (6th Dist. 1997) (recognizing that "the state had a legitimate interest in providing a means of access to educational facilities for students, while not unduly burdening the resources of the school district"); s*ee also Menefee v. Queen City Metro*, 49 Ohio St.3d 27, 29 (1990) ("[A] state has a valid interest in preserving the financial soundness of its political subdivisions."), citing *Shapiro v. Thompson*, 394 U.S. 618, 633 (1969); *State ex rel. Ferguson v. Court of Claims of Ohio, Victims of Crime Div.*, 2003-Ohio-1631, ¶ 32 ("Conserving scarce resources is a legitimate purpose."); *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 353 (1994) ("The Supreme Court of the United States has declared that the preservation of fiscal integrity is a valid state interest."); *Kagy v. Toledo-Lucas Cty. Port Auth.*, 121 Ohio App.3d 239, 244 (6th Dist. 1997) (holding that a statute allowing a political subdivision to immediately appeal an immunity decision serves a legitimate governmental purpose in conserving the fiscal resources of the political subdivision).

{¶ 34} Turning to the second step, it is worth noting that Swiech does not challenge the trial court's judgment that the School District's bussing plan complies with its obligation under R.C. 3327.01. The issue then is not whether the School District has failed to provide bussing for nonpublic or community school students while providing bussing for public school students. Nor is the issue whether the School District inappropriately circumvented paying Swiech in lieu of providing transportation based upon a finding of impracticality under R.C. 3327.02. Indeed, under the undisputed facts of this case as judged by the trial court, the School District offers statutorily compliant transportation to Swiech's children. Thus, the issue is whether the School District's

15.

bussing plan violates equal protection only in the *manner* of the transportation that is provided.

{¶ 35} Swiech argues that the manner of transportation violates equal protection because her children are similarly situated to public school children in all relevant aspects. Further, she argues that the School District's reliance on the efficient use of limited resources to justify its bussing plan is irrational in light of the fact that it voluntarily expends resources to provide bussing services to public high school students who are not statutorily required to receive them. Both arguments challenge the rational relationship between the classification and the legitimate governmental interest, and they will be addressed in turn.

{¶ 36} As to the first argument, Swiech contends that because R.C. 3327.01 and 3327.02 already contemplate factors such as geographical dispersion, number of students, start and end times, travel time, and available alternatives, those factors are irrelevant for determining whether there should be a classification between public school students and nonpublic and community school students. Her position may have some merit if the issue was one class receiving transportation while the other did not. However, as noted above, both classes receive statutorily compliant transportation, and the issue is only the manner in which that transportation is provided. As such, it is rational and reasonable to classify public school students separately from nonpublic and community school students based on the differences in how many students attend each school, where the students are located in relation to their school, and when the schools start and end.

16.

{¶ 37} To be sure, the classifications may not be perfect as the transportation needs for some nonpublic or community school students may differ greatly than those for other nonpublic or community school students—for example, transportation to nonpublic or community schools located outside of the School District versus transportation to St. Joe's, which is located near the center of the School District. However, "[a] State does not violate the Equal Protection Clause merely because the classifications made by its [actions] are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Sherman*, 2020-Ohio-4960, at ¶ 15, quoting *McCrone*, 2005-Ohio-6505, at ¶ 8. Here, it is reasonable that the smaller number of students attending St. Joe's would be transported in a different manner than their public-school counterparts based on the fact that the St. Joe's students are dispersed throughout the entire school district and start and end school at a different time.

{¶ 38} As to the second argument, Swiech contends that it is "nonsensical" for the School District to claim that a lack of resources justifies bussing nonpublic and community school students via the hub and spoke system while simultaneously providing direct transportation to and from school for high school students, who are not statutorily entitled to receive any transportation. Swiech's argument is one of fit, i.e., how closely does the action relate to the goal, and what other alternatives exist. Under rational basis review, however, courts are "compelled" to accept the government's generalizations "even when there is an imperfect fit between means and ends." *Pickaway*, 2010-Ohio-4908, at ¶ 32, quoting *Am. Assn. of Univ. Professors*, 87 Ohio St.3d at 58, quoting *Heller*

17.

*v. Doe by Doe*, 509 U.S. 312, 321 (1993). The fit "is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *Id.*, quoting *Am. Assn. of Univ. Professors* at 58.

{¶ 39} The undisputed facts in this case demonstrate that prior to adopting the current bussing scheme, the School District had difficulty ensuring enough drivers and maintaining all its routes and was found to be in noncompliance with its requirement to provide transportation. Since implementing the new plan calling for the transportation of all nonpublic and community school students via the hub and spoke system, the School District has had to cancel a route only one time and has not been found in noncompliance. In addition, as described in Wolpert's affidavit, it is rational that it would be more efficient to pick up nonpublic and community school students with busses already driving through an area than to have separate, overlapping busses for public school students and nonpublic or community school students.

{¶ 40} Thus, the School District's plan is rationally related to the goal of conservation and efficient use of public resources in providing bus transportation, even though other alternatives such as eliminating bussing for high school students may exist.

{¶ 41} Further, this result is consistent with *Hensley v. Toledo Area Regional Transit Authority*, in which this court held that the Toledo Public Schools' use of metro buses instead of yellow school buses to transport approximately sixty percent of its students did not violate equal protection, reasoning that "the board's use of both its own yellow school buses and TARTA buses ensures that the maximum number of students is

18.

transported to school and promotes a thorough and efficient system of common schools."
*Hensley*, 121 Ohio App.3d 603, 613 (6th Dist. 1997).

{¶ 42} In sum, because the classification at issue does not involve a fundamental right or a suspect class, and because the School District's actions in transporting nonpublic and community school students via a hub and spoke system is rationally related to its legitimate government interest in the conservation and efficient use of public resources in providing statutorily required bus transportation, the trial court did not err when it awarded summary judgment in favor of the School District on Swiech's equal protection claim.

### B. Free Exercise

{¶ 43} Swiech alternatively argues that the School District's bussing plan violates her right to freely exercise her religion under Ohio's constitution.

{¶ 44} Article 1, Section 7 of the Ohio Constitution states,

All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience. No person shall be compelled to attend, erect, or support any place of worship, or maintain any form of worship, against his consent; and no preference shall be given, by law, to any religious society; nor shall any interference with the rights of conscience be permitted. . . . Religion, morality, and knowledge, however, being essential to good government, it shall be the duty of the general assembly to pass suitable laws to protect every religious denomination in the peaceable enjoyment of its own mode of public worship, and to encourage schools and the means of instruction.

{¶ 45} The Ohio Constitution's free exercise protection is broader than that found in the United States Constitution. *Humphrey v. Lane*, 89 Ohio St.3d 62, 67 (2000).

The Ohio Constitution allows no law that even *interferes* with the rights of conscience. The federal Constitution concerns itself with laws that *prohibit*

19.

> the free exercise of religion. By its nature the federal Constitution seems to target laws that specifically address the exercise of religion, *i.e.*, not those laws that tangentially affect religion. Ohio's ban on any interference makes even those tangential effects potentially unconstitutional.

(Emphasis sic.) *Id.* Thus, for religiously neutral, evenly applied government actions that interfere with the rights of conscience, "the state [action] must serve a compelling state interest and must be the least restrictive means of furthering that interest." *Id.* at 68. "That protection applies to direct and indirect encroachments upon religious freedom." *Id.*

{¶ 46} "To state a prima facie free exercise claim, the plaintiff must show that his religious beliefs are truly held and that the governmental enactment has a coercive affect against him in the practice of his religion." *Id.*, citing *State v. Whisner*, 47 Ohio St.2d 181, 200 (1976). The burden then shifts to the State "to prove that the regulation furthers a compelling state interest." *Id.* at 69. "Once that aspect has been satisfied, the state must prove that its regulation is the least restrictive means available of furthering that state interest." *Id.*

{¶ 47} Swiech argues that the trial court erred when it determined that she did not state a prima facie free exercise claim. She asserts that the record shows that she has sincerely held religious beliefs, that she acted on those beliefs by enrolling her children in a religious school, and that she and her children "are afforded lesser transportation service as a consequence of this exercise." She contends that receiving lesser governmental benefits due to the exercise of religion tends to be coercive, and therefore

20.

the burden should shift to the School District to demonstrate that the bussing plan is the least restrictive means of serving a compelling interest.

{¶ 48} The School District, on the other hand, argues that there is no evidence that its bussing plan tangentially interferes with Swiech's ability to freely exercise her religion. During discovery, Swiech described that she exercises her sincerely held religious beliefs by attending mass, observing religious holidays, making all applicable sacraments, attending catholic school, volunteering with the church and school, and participating in Catholic Youth Organization sports. The School District argues that its transportation plan does not impede Swiech's ability to engage in any of those activities in any way. Furthermore, the School District argues that its bussing plan is narrowly tailored to achieve its compelling interests in affording transportation services to the greatest number of students possible and avoiding an Establishment Clause violation by giving preferential treatment to St. Joe's.

{¶ 49} Upon review, we first note that Swiech's argument that she receives lesser governmental benefits as a consequence of the exercise of religion lacks nuance. Swiech's children receive different transportation not because she is exercising her religion, but because she chooses to send them to a nonpublic or community school. All students residing in the School District who attend a nonpublic or community school are similarly transported regardless of whether they attend a religious or non-religious school. For example, students that attend the Toledo School for the Arts, Maumee Valley Country Day School, Northwest Ohio Classical Academy, and Central Academy of Ohio are all transported via the hub and spoke system.

21.

**{¶ 50}** In any event, we agree with the School District that its bussing plan does not have a coercive affect against Swiech in the practice of her religion. While the bussing plan may impact Swiech's and her children's sleep schedules, work schedules, and medication schedules, it does not interfere with their ability to practice their religion. Indeed, the School District's bussing plan ensures that Swiech's children are able to attend their chosen religious school on time every day. Therefore, Swiech has not demonstrated a prima facie claim that her free exercise protections have been violated, and the trial court did not err when it awarded summary judgment to the School District on that claim.

### C. Injunctive Relief

**{¶ 51}** Finally, the trial court did not err in granting summary judgment to the School District on Swiech's claim for injunctive relief.

**{¶ 52}** "The grant of a permanent injunction is an 'extraordinary remedy in equity where there is no adequate remedy available at law." *Gimex Properties Corp., Inc. v. Reed*, 2022-Ohio-4771, ¶ 60 (6th Dist.), quoting *City of Toledo v. State*, 2018-Ohio-2358, ¶ 15. "Injunctive relief 'is not available as a right but may be granted by a court if it is necessary to prevent a future wrong that the law cannot.'" *Id.*, quoting *Garono v. State*, 37 Ohio St.3d 171, 173 (1988).

**{¶ 53}** A party seeking a permanent injunction bears the burden of establishing, by clear and convincing evidence, that (1) the plaintiff has prevailed on the merits; (2) the plaintiff will suffer irreparable injury if the injunction is not granted; (3) no third parties will be unjustifiably harmed if the injunction is granted; and (4) the public interest will be

22.

served by the injunction.  *Id.* at ¶ 61-62; *Miller v. Miller*, 2005-Ohio-5120, ¶ 10-11 (11th Dist.).  Here, because Swiech has not prevailed on the merits, the trial court did not err in denying injunctive relief.  *See Taxiputinbay*, 2023-Ohio-1237, at ¶ 45 (6th Dist.).

### III. Conclusion

{¶ 54} For the foregoing reasons, we hold that the trial court did not err when it awarded summary judgment to the School District on Swiech's claims that the bussing plan violated her rights to equal protection and the free exercise of religion.  Accordingly, Swiech's assignment of error is not well-taken.

{¶ 55} The judgment of the Lucas County Court of Common Pleas is affirmed. Swiech is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Gene A. Zmuda, J.                              _____
                                                             JUDGE
John R. Willamowski, V.J.

                                              _____
Juergen A. Waldick, V.J.                                     JUDGE
CONCUR.

                                              _____
                                                             JUDGE

Judges John R. Willamowski and Juergen A. Waldick, Third District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.